NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

JOSEPHINA DELAROSA       :
                           :
                           :
                           :
          Plaintiff,      :              **Hon. Dennis M. Cavanaugh**
                           :
         v.               :              **OPINION**
                           :
MICHAEL J. ASTRUE,      :      Civil Action No.: 08-5975 (DMC)
Commissioner of Social Security, :
                           :
         Defendant.     :
_____:


<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

      This matter comes before the Court upon Josefina Dela Rosa's ("Plaintiff") appeal from the

Commissioner of Social Security's ("Commissioner") final decision denying Plaintiff's request for

Disability Insurance Benefits ("DIB") and Supplementary Security Income ("SSI") under the Social

Security Act ("the Act").  Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. For the

reasons set forth below, it is the decision of this Court that the determination of the ALJ is **affirmed**.

**I.**    <u>B</u><small>ACKGROUND</small>

      A.     Procedural History

      On September 9, 2002, Plaintiff filed an application for DIB, and subsequently filed for SSI

on May 15, 2003. Administrative Transcript ("TR") at 11.  Plaintiff alleged an inability to work due

to a combination of arthritis, asthma, high blood pressure, ulcers, back pain and major depression.

<u>Id</u>. at 47.  This application was denied.  Plaintiff filed a timely request for reconsideration, also

denied on September 22, 2003. Id. at 30-32.  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 33.  On July 28, 2004, a hearing was conducted before ALJ Edward J. McNeil in Newark, New Jersey.  Id. at 35-43.

ALJ McNeil issued a decision on February 28, 2005 denying Plaintiff's application for disability and DIB under § 216(I) and § 223, respectively 42 U.S.C. §§ 416 and 423, as well as her claim for SSI under §1602 and §1614(a)(3)(A), respectively 42 U.S.C. §§ 1381a and1382c, of the Act.  ALJ McNeil concluded that Plaintiff's impairments failed to meet or equal those "listed impairments" in Appendix 1 and that Plaintiff had the residual functional capacity ("RFC") to perform past relevant work Id. at 15.  On April 15, 2005, Plaintiff submitted a request for review of that decision to the Appeals Council. Id. at 11.  On July 12, 2005, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final.  Id. at 8-16.  Plaintiff was not provided with a copy of the Appeals Council's action at this time. Id. at 5. On September 10, 2007, Plaintiff requested an extension of time to file a civil action, pursuant 20 C.F.R. § 416.1411, for lack of notice of the Appeals Council Action until August 12, 2007. Plaintiff's Brie ("Pl. Br.") at 6.

Plaintiff is seeking DIB and SSI for the duration of her disability, which she alleges began on January 1, 2002. Id. at 11.  Plaintiff argues that the record contains "substantial evidence" to support a finding that she was entitled to these benefits.

        B.      Factual History

Plaintiff was born in the Dominican Republic and came to the United States in 1984. Id. at 254.  Plaintiff resides in Paterson, New Jersey with her husband and daughter. Id. at 46.  Plaintiff has a twelfth grade education level and speaks minimal English. Id. at 46.  Plaintiff worked for a total

of 18 years on the floor of three different factories.  From 1984-1989 Plaintiff assembled parts for airplanes and various machinery; from 1989-1999 she cleaned and assembled computer parts; and from 1999-2000 she cleaned floors.  Id.  Plaintiff's financial income includes $800 per month that Plaintiff's husband receives from his pension and $61 per month in food stamps.  Id. at 256.

At the administrative hearing on July 28, 2004, Plaintiff testified with the assistance of an interpreter.  Id. at 11.  Plaintiff stated that she stopped working as a result of the factory closing.  Id. 258.  Plaintiff maintains that she has not regained employment after 2000 because she suffers intense pain as a consequence of back, hip, and leg injuries as well as depression.  Id. at 260.  In terms of physical impairments, Plaintiff testified to experiencing pain beginning in her hip and continuing all the way down her leg, including numbness in her toes.  Id. at 269.  Additionally, Plaintiff indicated that she also felt a pinching-like pain in her neck, back and shoulders.  Id. at 269.  In her testimony, Plaintiff admitted to taking medications for her back pain; however, Plaintiff stated that she had to stop taking this medication because she had stomach ulcers which were further exacerbated by the pain medication.  Id. at 258.

In addition to back, hip and leg pain, Plaintiff testified to suffering from depression, ulcers, arthritis, asthma and high blood pressure.  Id. at 258-59; 270.  Plaintiff indicated that the depression had been present for the past seven years, but that the last two years had been especially severe.  Id. at 262.  As a result of her depression, Plaintiff further testified that she suffered from a loss of appetite, lack of concentration, and mood swings, had trouble sitting alone, developed poor hygiene, and sometimes felt suicidal.  Id. at 266-267.  Plaintiff further stated that she experienced constant confusion, feelings of helplessness and hopelessness, and had trouble sleeping.  Id. at 268.  Plaintiff testified that she was prescribed Paxil to help with her depression.  Moreover, Plaintiff testified that

3

she suffered from stomach ulcers for a period of five to six years resulting in immense pain. Id. 269. Plaintiff indicated that she had been taking Prevacid and Mylanta to help with the pain.  Id. at 270. Plaintiff was diagnosed with arthritis in her legs, ankles, wrists and shoulders.  Id. 272.  Plaintiff originally took Celebrex to alleviate the pain, but switched to Ibuprofen as a result of her stomach ulcers.  Id. 273.  Plaintiff further testified she had been suffering from asthma for years, and was being treated by Dr. Juan De la Cruz who prescribed her an inhaler to control the asthma. Id. 270; 272.  Lastly, Plaintiff testified that her high blood pressure affected her vision and caused her to feel really tired and collapse. Id. 272.

C.      Medical Records

ALJ McNeil examined several medical reports submitted by physicians who treated or examined Plaintiff. Id. at 13.  Plaintiff's medical records document her doctor visits and diagnoses of alleged injuries, including reports from Dr. Anthony Porcelli, M.D., Dr. Hiremath, M.D., Dr. Eisert, M.D., Dr. Matari, M.D., and Dr. Sossi, M.D.  Generally, Plaintiff's records reveal a history of back problems and depression.

1.      *Medical Report of Dr. Anthony Porcelli, M.D.*

In October 2002, Plaintiff saw Dr. Anthony Porcelli, M.D. to evaluate her back pain.  Based on an electrodiagnostic study, the attending physician found that the study was "highly suggestive of root involvement, primarily in the distribution of left L5.  Dr. Porcelli also found denervation potentials in the left medial gastrocnemius and at the left L4-5 paraspinal level." Id. 153.

2.      *Medical Reports of Dr. Hiremath, M.D. and Dr. Luis Vassallo, M.D.*

On July 17, 2003, radiologist Dr. Hiremath, M.D. examined Plaintiff's back and determined

4

the lumbosacral spine to be "normal." Id. 176.  Plaintiff was also seen by Dr. Luis Vassallo, M.D. who reported that Plaintiff experienced chronic back pain, radiating to the right lower extremity without any neurological deficit. Id. 179.  Additionally, Dr. Vassallo noted that all of Plaintiff's joints were within normal range of motion without any deformities.  Id.  At the time of this examination, Dr. Vassallo found Plaintiff was able to use both hands for fine and gross manipulation and did not need any hand held assistive device for ambulation.  Id.

           3.      *Medical Reports of Dr. Otto Eisert, M.D. and Dr. Hussein M. Matari, M.D.*

On February 23, 2003, Plaintiff was seen by Doctors Otto Eisert, M.D. and Hussein M. Matari, M.D.  After examining Plaintiff's back, Dr. Eisert found that Plaintiff's reflexes, sensation, and pulsation were normal, and found no spasm or tenderness of the paralumbar muscles. Id. 135 With respect to Plaintiff's cervical spine, Dr. Eisert found Plaintiff's range of motion was within normal limits. Id.  Dr. Eisert concluded that Plaintiff had possible cervical and lumber radiculopathy and referred Plaintiff to Dr. Matari for x-rays. Id.  Upon completion of the x-rays, Dr. Matari concluded that Plaintiff had a possible muscle spasm, but no acute disease was seen in the lumbar spine. Id. 138.

           4.      *Medical Report of Dr. Roberto Sossi, M.D.*

On July 15, 2003, Plaintiff was seen by Dr. Roberto Sossi, M.D. for the evaluation and treatment of depression.  Dr. Sossi reported that Plaintiff was suffering from a major depressive episode with psychomotor retardation that had not been addressed psychiatrically, and continued to progress. Id. 175.  Dr. Sossi found Plaintiff to be cooperative with relevant speech, and although she was poorly responsive, anxious and depressed, Dr. Sossi found no evidence of delusions,

hallucinations, compulsion or social phobias. Id.  According to Dr. Sossi, Plaintiff had gradually lost her ability to comprehend and follow instructions or adapt to any work situation or perform any significant work independently. Id.

## II.   STANDARD OF REVIEW

_____A.   Scope of Judicial Review

A review of a final decision of the Commissioner is made pursuant to 42 U.S.C. § 405(g). The district court is permitted to review the record as a whole upon which a determination of the Commissioner is based.  Morales v. Apfel, 225 F. 3d 310, 316 (3d. Cir. 2000). The court must give conclusive effect to a Commissioner's determination of ineligibility for certain benefits if it finds that the decision was supported by substantial evidence 42 U.S.C. § 405 (g); Taylor v. Barnhart, 474 F. Supp. 2d 650, 661 (2007).  As defined by the Supreme Court, substantial evidence is:

> more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Accordingly, it must do more than create a suspicion of the existence of the fact to be established....[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.

Id. (quoting NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 (1939)).  Some types of evidence will not be "substantial."  For example:

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g. that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.

Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). "Where the ALJ's findings of fact are supported by substantial evidence, the [reviewing court] is bound by these findings, even if [it]

would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft v. Apfel, 181 F. 3d 358, 360 (3d. Cir. 1999)).  Thus, if there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld.  42 U.S.C. § 405 (g).

The function of a district court is to determine whether the record, as a whole, contains substantial evidence to support the findings of the Commissioner.  Adorno v. Shalala, 40 F.3d 43, 46 (3d. Cir. 1994).  Reasonable minds can reach different conclusions following review of the evidentiary record upon which the decision of the Commissioner is based.  A court may not, however, displace the choice of an administrative body "between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." N.L.R.B. v. Greensburg Coca-Cola Bottling Co., 40 F. 3d. 669, 673 (3d. Cir. 1994) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 747, 488 (1951)).  "The district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

In order to conduct an accurate review of the matter, the ALJ is expected to do more than simply state factual conclusions.  Stewart v. Secretary of Health, Educ. And Welfare, 714 F. 2d. 287, 290 (3d. Cir. 1983).  The ALJ must make specific findings of fact to support his or her ultimate findings.  Skypes v. Apfel, 228 F. 3d 359, 269 (3d. Cir. 2000).  The ALJ must indicate which evidence he rejects and his reason(s) for discounting such evidence; without this, the court cannot determine whether the evidence was discredited or simply ignored.  See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v Harris, 642 F. 2d 700, 705 (3d. Cir. 1981));

7

Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001).

      B.      Statutory Standard for Disability Insurance Benefits and Supplemental Security Income

      A plaintiff's eligibility for Disability Insurance Benefits and Supplementary Security Income is governed by 42 U.S.C. § 423 and 42 U.S.C. § 1382, respectively.  In order to be eligible for DIB or SSI, the Plaintiff must be found "disabled," a burden which the Plaintiff bears.  Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972)); 42 U.S.C. § 423(d)(1).  Title II of the Social Security Act defines "disabled" as an:

> inability to engage in any substantial gainful activity by reasons of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months....

42 U.S.C. § 423(d)(1)(A).  Any mental or physical impairment(s) must be "of such severity that [plaintiff] is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[1]  § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); Barnhart v. Thomas, 540 U.S. 20, 21 (2003).

      The Social Security Administration ("SSA") has promulgated regulations establishing a five-step evaluation procedure to determine a claimant's disability. 20 C.F.R. § 404.1520; § 416.920 (parallel regulations governing claims for SSI).  If the SSA can make a determination of disability or non-disability at any one of the five-steps, the claim will not be reviewed further. Barnhart v.

---

[1]

 "Work which exists in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." § 423(d)(2)(A).

Thomas, 540 U.S. 20, 24 (2003).  When making such a determination the court  will consider all the evidence in the record. 20 C.F.R. § 404.1520(a)(3).

At the first step, plaintiff must prove that she is not engaged in any "substantial  gainful activity" or she will not be found to be disabled regardless of "medical condition...age, education, and work experience."§ 404.1520(a)(4)(I); (b).  Substantial gainful activity is both substantial and gainful. § 404.1572.  Substantial work activity involves doing "significant physical or mental activities," and does not exclude work done on a part-time basis, work performed for less compensation, or work performed with less responsibility. § 404.1572(a). Gainful work activity is work engaged in for pay or profit, whether or not profit is realized.  § 404.1572(b).  Activities such as "taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" generally do not constitute substantial gainful activity.

Next, at step two the court will consider the severity of the plaintiff's medical impairments. 20 C.F.R. §404.1520(a)(4)(ii).  A plaintiff's impairment(s) must "significantly limit [her] physical or mental ability to do basic work activities" or she will be found to be not disabled.  Bowen v. Yuckert, 482 U.S. 137, 142 (1987).  The ability to do "basic work activities"[2] is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1520(d); § 416.920(d). See Yuckert, 482 U.S. at 137. A severe physical or mental impairment, or a combination of impairments, must result in death or continuously last for a period of more than twelve months or else the claimant will found to be not disabled.§ 404.1520(a)(4)(ii); § 404.1509.  A failure to establish this initial

---

[2]

  "Such abilities and aptitudes include 'physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling'; 'capabilities for seeing, hearing, and speaking'; 'understanding, carrying out, and remembering simple instructions'; 'use of judgment'; 'responding appropriately to supervision, co-workers, and usual work situations'; and 'dealing with changes in a routine work setting..'" See Yuckert, 482 U.S. at 141.

burden required at steps one and two automatically results in a denial of benefits, ending the court's inquiry.  Yuckert, 482 U.S. at 146–47 n.5 (delineating the burdens of proof at each step of the disability determination).

If the impairment is determined to be "severe," the SSA proceeds to step three where it compares the impairment to a specified list of impairments that are acknowledged by the Secretary to be "so severe as to preclude substantial gainful employment." § 404.1520(d); Yuckert, 482 U.S. at 141.  If any impairment meets or equals one of the impairments listed in Appendix 1 as well as the duration requirement, the claimant will be found to be disabled. § 404.1520(a)(4)(iii).  However, if the claimant's impairment(s) are not ones that are conclusively presumed to be disabling, the ALJ will proceed to step four.

At this point, the claimant's RFC and past relevant work will be evaluated.  § 404.1520(a)(4)(iv).  "Past relevant work" is work performed by the plaintiff within the past fifteen years, in which the duration was significant enough for plaintiff to learn to do the work, and the work qualified as "substantial gainful activity."§ 416.965.  In making this assessment, a court must consider all symptoms, including pain, the extent to which these symptoms can "reasonably be accepted as consistent with the objective medical evidence," and medical opinions, reflecting the nature and severity of the impairments and resulting limitations. § 404.1527; § 416.927.  If it is determined that a plaintiff can still perform her past relevant work, the plaintiff will not be considered disabled.  § 404.1520(a)(4)(iv).

In the fifth and final step, RFC is evaluated once again in relation to the plaintiff's "age, education, and work experience"  to determine if she can adjust to other work. § 404.1520(a)(4)(v).

At this step, the burden shifts to the Commissioner to demonstrate that the plaintiff can perform other substantial gainful work. § 404.1520(f).  If the Commissioner fails to satisfy this burden, the claimant shall receive social security benefits.  Yuckert, 482 U.S. at 146-47 n.5.

C.      The Record Must Contain Objective Medical Evidence

Under the Act, disability must be established by objective medical evidence.  "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."  42 U.S.C. § 423(d)(5)(A).  Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section."  Id.  Specifically, a finding that one is disabled requires:

> medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A). Credibility is a significant factor.  When examining the record:

> The adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities. To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. The requirement for a finding of credibility is found in 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

Nevertheless, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R.

11

§ 404.1529(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

## III.   DISCUSSION

Before the Court is Plaintiff's appeal of ALJ McNeil's decision finding Plaintiff ineligible for SSI benefits due to lack of a disability in accordance with the regulations.  Plaintiff argues that the Commissioner's decision should be reversed because Plaintiff contends that ALJ McNeil improperly evaluated the medical evidence at step three, erred in finding that Plaintiff could return to past relevant work at step four, and, in the alternative, failed to properly analyze Plaintiff's ability to perform the full range of light work at step five.  For the following reasons, the Court concludes that the findings of ALJ McNeil are supported by substantial evidence and, therefore, affirmed.

### A.   ALJ McNeil's Findings

#### 1.   *Step One of the Five Step Analysis*

Pursuant to the SSA regulations at step one, ALJ McNeil determined that Plaintiff had not been engaged in substantial gainful activity since the alleged onset of her disability in 2002. TR at 15. Accordingly, ALJ McNeil proceeded to step two of his analysis.

#### 2.   *Step Two of the Five Step Analysis*

The second step requires Plaintiff to establish that she has a severe physical or mental impairment, or a combination of impairments, that will result in death or have continuously lasted for a period of more than twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); § 404.1509.   After reviewing the medical records and testimony, ALJ McNeil determined the claimant's depression and lower back pain were severe. TR at 15.

#### 3.   *Step Three of the Five Step Analysis*

Step three of the analysis requires that Plaintiff's impairment(s) be "equivalent to one or more of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141. If any impairment meets or equals one of the impairments listed in Appendix 1 (the "Listed Impairments") as well as the duration requirement, Plaintiff will be found to be disabled. § 404.1520(a)(4)(iii). In the instant matter, ALJ McNeil found that Plaintiff's medically determinable impairments, although "severe," did not "singly or in combination" meet or medically equal one of the impairments set forth in Appendix 1, Subpart P, Regulation No. 4. TR. 13-15.

ALJ McNeil reviewed the record and determined Plaintiff's alleged impairments, including back pain and depression, did not meet those listed in Appendix 1. ALJ McNeil underscored the findings of Dr. Luis Vassallo which stated that Plaintiff's x-ray of the lumbosacral spine was "normal" and all of Plaintiff's joints were within "normal range of motion without deformities." TR at 13. Additionally, ALJ McNeil reiterated that Dr. Vassallo concluded that Plaintiff could use both hands for fine and gross manipulation and that she did not need any hand-held assistive device for ambulation. Id. ALJ McNeil also commented on the findings of Dr. Otto Eisert, whom the Plaintiff saw in February 2004. In Dr. Eisert's report, he indicated that Plaintiff had a "normal range of motion in the cervical spine as well as the upper extremity joints." Further, Dr. Eisert indicated that Plaintiff's reflexes and sensation were "normal," that there was no spasm or tenderness of the paralumbar muscles, that Plaintiff was able to do gross and fine grips with her hands and that although an x-ray revealed a possible muscle spasm, there was no disease of the lumbar present. Id. Lastly, ALJ McNeil addressed Dr. Sossi's report analyzing Plaintiff's claim of depression. The ALJ acknowledged Dr. Sossi's assessment that Plaintiff suffered from a "major depressive episode with

13

psychomotor retardation," and that although she was cooperative with relevant speech, she was poorly responsive, anxious and depressed. Id. ALJ McNeil also noted that Dr. Sossi opined that Plaintiff had "gradually lost her ability to comprehend and follow instructions or adapt to any work situation or perform any significant work independently. Id.

ALJ McNeil also considered the subjective complaints of the Plaintiff. Id. ALJ McNeil acknowledged Plaintiff's testimony that she could not work because she had too many problems, including tremendous pain in her back and legs for which she took Ibuprofen, Paxil and Prednisone. Upon consideration of Plaintiff's subjective testimony as well as the objective medical evidence on record, ALJ McNeil concluded that "although the Plaintiff had underlying medically determinable impairments that could reasonably cause the symptoms alleged, the medical and other evidence establishes that the severity and functional effects of the claimant's alleged symptoms are not fully credible." Id. If the Plaintiff does not suffer from a listed impairment or its equivalent, the analysis proceeds, as previously stated, to steps four and five.

4.    *Step Four of the Five Step Analysis*

Under these steps, "the Commissioner must determine whether the claimant retains the ability to perform either his [or her] former work or some less demanding employment." Sullivan, 970 F.2d at 1182. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments in Appendix 1, ALJ McNeil analyzed Plaintiff's RFC and past relevant work pursuant to step four of the regulations. 20 C.F.R. § 404.1520(a)(4)(iv). In making this assessment, ALJ McNeil considered claimant's symptoms, including pain, the extent to which her symptoms could "reasonably be accepted as consistent with the objective medical evidence," and medical

14

opinions, reflecting the nature and severity of her impairments and the resulting limitations. § 404.1527; § 416.927.

ALJ McNeil determined that Plaintiff's mental condition did not significantly affect her ability to "understand, carry out and remember instructions, use judgment, respond appropriately to supervision, co-workers and usual work situations, and deal with the changes in a routine work setting." TR 14. Additionally, ALJ McNeil determined that the claimant's mental condition did not affect her daily activities, social functioning, concentration, persistence or pace. Moreover, ALJ McNeil noted that Plaintiff had no episodes of decompensation nor was she hospitalized or consistently treated for depression or back pain. Id.

ALJ McNeil held Plaintiff to have a RFC of "light work," stating the Plaintiff had the abilities to "lift and carry up to twenty pounds occasionally, ten pounds frequently and stand, walk and sit for six hours in an eight-hour workday." Id. Based on the evidence presented in this case, in Exhibit 2E concerning Plaintiff's past relevant work as a factory worker where she was required to "lift and carry up to twenty pounds and stand and walk for six hours in an eight-hour workday," ALJ McNeil determined that Plaintiff retained the capacity to perform her past relevant work. Id.

> 5.    *Step Five of the Five Step Analysis*

Based on the foregoing determination, the evaluation did not proceed to step five. Id. ALJ McNeil found that Plaintiff was not disabled under the definition proffered in the Social Security Act, at any time through the date of this decision. Id.

> B.    Substantial Evidence

1.  *ALJ McNeil's Determination that Plaintiff's medical impairments did not meet or equal those "Listed Impairments" in Appendix 1 is supported by substantial evidence in the Record.*

Plaintiff contends that ALJ McNeil erred in not addressing all of the elements in each subsection for the impairment listing 12.04.  Plaintiff argues that based on the report of Dr. Sossi (Exhibit 7F), the record evidences symptoms listed in 12.04 subsection A in support of a finding of depressive syndrome, including appetite disturbance, sleep disturbance, decrease in energy, feelings of guilt or worthlessness and difficulty in concentrating. TR at 50.

In Rivera v. Commissioner the Court stated that the ALJ is required to "fully develop the record and explain his findings at step three, including an analysis of whether and why [each of plaintiff's] impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments."  164 Fed. Appx. 260, 263 (3d. Cir. 2006).  The Court further stated that "[i]t is not enough for the ALJ to conclude that no medical evidence meets or equals any of the listings, in the absence of any discussion of why the specific evidence provided by the Plaintiff was not equivalent." Id.

ALJ McNeil determined that Plaintiff's impairments do not meet or medically equal one of the listed impairments in Appendix 1 based on the written report of Dr. Sossi. TR at 15. Although Dr. Sossi acknowledged that Plaintiff had "gradually lost her ability to comprehend and follow instructions, adapt to any work situation or perform any significant work independently," his ultimate assessment of Plaintiff's medical condition is more limited. Id. at 175.  In the final assessment, Dr. Sossi concluded that patient was suffering from a "major depressive episode with psychomotor retardation." Id.  While the medical evidence establishes that Plaintiff showed symptoms of

16

depression, she does not demonstrate at least four of the symptoms in subsection A. ALJ McNeil properly reviewed the reports and findings of Dr. Sossi and made a decision based on the ultimate assessment of the Plaintiff's condition. In regards to 12.04 subsection A, ALJ McNeil did not render a blanket conclusion, but rather supported his position by identifying the absence of objective medical evidence documenting the requisite characteristics outlined under the listing.

Additionally, Plaintiff contends that she meets three of the four symptoms in subsection B, including marked restriction in activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence or pace. Although Dr. Sossi notes that Plaintiff has "lost interest and ambition..., [w]ould not venture outdoors..., would not take good care of her personal hygiene and is mostly withdrawn" he does not state that Plaintiff had a "marked restriction" in any one of the four requirements under subsection B. A marked limitation:

> means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis.

Listed Impairments § 12.00, sub. C. ALJ McNeil notes that Plaintiff has had no episodes of decompensation, and moreover, Plaintiff has not been hospitalized or received consistent treatment for depression or back pain. Therefore, the ALJ correctly concluded that Plaintiff's mental condition cannot be said to have significantly affected her daily activities, social functioning or concentration, persistence or pace. TR at 15. Where, as here, the treating physician does not document Plaintiff as having a "marked" restriction, the ALJ did not err in his conclusion that Plaintiff does not satisfy the criteria of Part B.

After examining both the objective and subjective medical testimony, ALJ McNeil determined that Plaintiff failed to meet the four symptom minimum requirement in subsection A as well as the two symptom minimum requirement in subsection B. ALJ McNeil's determination was made with the support of substantial evidence, and therefore, ALJ McNeil did not err in concluding that Plaintiff was not considered disabled under step three.

2.   *ALJ McNeil's Determination That Plaintiff Retained the Residual Functional Capacity to Perform Light Work Despite Her Depression Is Supported by Substantial Evidence from the Record*

i.   <u>Substantial Evidence Supported ALJ McNeil's Determination That Plaintiff's Impairments Do Not Preclude the Performance of Her Past Relevant Work.</u>

Substantial evidence supports ALJ McNeil's decision that despite Plaintiff's back pain and depression, Plaintiff still retained the RFC to perform light work activity, and, therefore, Plaintiff was not disabled. In reaching this conclusion, ALJ McNeil considered "all symptoms, including pain, and extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence." 20 C.F.R. § 404.1529. ALJ McNeil also considered any medical opinions, which reflected the "nature and severity of the impairments and resulting limitations."§ 404.1527.

Plaintiff claims that she can no longer perform past relevant work, which consists of cleaning floors and assembling and washing machinery and airplane parts because of arthritis and pain in her back, shoulder and leg which limits her ability to walk, sit and stand. TR at 50. In analyzing Plaintiff's back pain, ALJ McNeil examined objective medical testimony from Dr. Hiremath, Dr. Vassallo, Dr. Otto Eisert, and Dr. Matari.

On July 17, 2003, Dr. Hiremath determined Plaintiff's lumbosacral spine to be "normal." Id. at 176.  On the same day, Plaintiff was examined by Dr. Vassallo.  Although Dr. Vassallo acknowledged that Plaintiff experienced chronic back pain, he noted that there was no "neurological deficit." Id. at 179.  Additionally, Dr. Vassallo determined that Plaintiff had back pain, but "[a]ll joints examined were within normal range of motion without deformities,...[claimant] can use both hands for fine and gross manipulation and that [the Plaintiff] does not need any hand held assistive device for ambulation." Id. at 179.  On February 23, 2003, Plaintiff was examined by Dr. Eisert.  According to Dr. Eisert, Plaintiff's reflexes, sensation, and pulsation were "normal," no spasm or tenderness was found in the paralumbar muscles, and Plaintiff's range of motion was within "normal" limits. Id. at 135.  Next, Plaintiff was seen by Dr. Matari.  After completing an x-ray of Plaintiff, Dr. Matari concluded she may have a possible muscle spasm, but no acute disease of the lumbar spine was present. Id. at 138.

Although Plaintiff had a history of back pain, evidence of this physical impairment alone is not sufficient to warrant an award of disability benefits under the Act.  Rather, Plaintiff must establish the impairment caused functional limitations precluding her from engaging in any substantial gainful activity. Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983).  ALJ McNeil examined both the medical evidence and the testimony of Plaintiff to determine if the allegation of disability was substantiated, in light of medical and other evidence, contrary to Plaintiff's subjective claims, the ALJ determined that the "severity and functional effects of the [plaintiff's] alleged symptoms are not fully credible." Id. at 13-15.

Plaintiff also contends that due to her depression she is unable to concentrate at a job that would require her to be alert 8 hours a day.  Plaintiff relies on a portion of Dr. Sossi's evaluation of

Plaintiff's mental status, stating that Plaintiff "gradually lost her ability to comprehend and follow instructions, adapt to any work situation or perform any significant work independently." Id. at 175. Although this information was taken into consideration, it was not instrumental in Dr. Sossi's final assessment of the Plaintiff, which stated that Plaintiff was suffering from a "major depressive episode." ALJ McNeil acknowledged this evidence, but also evaluated Plaintiff's lack of compliance in regards to taking prescribed medication. It was apparent from Plaintiff's testimony that she was not following doctor's orders. Id. at 14; 258-267. If a claimant has failed to follow prescribed treatment of a physician, without good reason, she will not be found to be disabled and will not receive benefits. 20 C.F.R. §404.1530; Vega v. Astrue, 2009 U.S. Dist. LEXIS 16549 (D.N.J. Feb. 27, 2009), aff'd Vega v. Comm. of Soc. Sec., 2009 U.S. App. LEXIS 28331 (3d Cir. Dec. 23, 2009). Based on the objective medical evidence and obvious failure of Plaintiff to follow prescribed treatment, ALJ McNeil properly determined that Plaintiff's depression did not affect her RFC or the determination of disability.

ALJ McNeil properly concluded that Plaintiff's RFC for "light work" allowed her to engage in past relevant work as a factory worker. In reaching this decision, ALJ McNeil relied on Plaintiff's testimony about her job. Given that the ALJ's findings that Plaintiff could engage in the full range of light work and that Plaintiff's RFC allowed Plaintiff to return to past relevant work as a factory worker are supported by substantial evidence, ALJ McNeil properly determined that Plaintiff was not disabled pursuant to step four of the SSA regulations.

———

20

    ii. <u>ALJ McNeil's Determination that Plaintiff was able to perform past relevant work was supported by substantial evidence and therefore he properly evaluated Plaintiff's Claim without an analysis under Step Five</u>

Plaintiff argues that her physical incapacity qualifies as a disability determination at step five as a result of her inability to perform any work that exists in the national or local economy. TR 49. Because ALJ McNeil determination that Plaintiff was able to perform past relevant work as a factory worker was supported by substantial evidence on record, it was appropriate for ALJ McNeil to conclude the analysis at step four and decline to proceed any further.  See § 404.1520(a)(4)(iv).

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the decision of the ALJ is **affirmed**.  An appropriate Order accompanies this Opinion.

             S/ Dennis M. Cavanaugh    
            Dennis M. Cavanaugh, U.S.D.J.

Date:   March 30 , 2010
Orig.:   Clerk
cc:    All Counsel of Record
      File