PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
P.O. Box 112
25 Market Street
Trenton, New Jersey  08625-0112
Attorney for Defendant
      North Jersey Developmental Center


By:    David Yi
        Deputy Attorney General
        (609) 292-9989
        david.yi@dol.lps.state.nj.us

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | | |
|---|---|---|
| PHYLLIS ATKINSON | : | Civil Action No. |
| | : | 07-04326 (PGS-ES) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NORTH JERSEY DEVELOPMENTAL | : | |
| CENTER, | : | |
| | : | |
| Defendant. | : | |
| | : | |


**BRIEF IN SUPPORT OF DEFENDANT, NORTH JERSEY DEVELOPMENTAL
CENTER'S MOTION FOR SUMMARY JUDGMENT**


David Yi, D.A.G.
  On the Brief

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF MATERIAL FACTS (SUBMITTED AS A SEPARATE DOCUMENT) . . . .

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I
PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF
RETALIATION UNDER TITLE VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   No Protected Activity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
         1.   September 28, 2004 Letter . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
         2.   December 1, 2004 Letter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     B.   No Materially Adverse Action and Causal Nexus . . . . . . . . . . . . . . . . . . 7
         1.   "Reduction" of Plaintiff's 2004 PAR Score . . . . . . . . . . . . . . . 9
         2.   Ms. Wolke's "Fix Me" Comment on December 1, 2004 . . . . . . 10
         3.   Red "A" Written Warning . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         4.   Vacation Requests "Denied" . . . . . . . . . . . . . . . . . . . . . . . . . . 12
         5.   Job Duties Taken Away . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     C.   Plaintiff Cannot Meet Her Burden of Proof . . . . . . . . . . . . . . . . . . . . . . 14

POINT II
PLAINTIFF CANNOT MEET HER BURDEN OF PROOF IN SUPPORT OF HER
DISCRIMINATION CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     A.   No Adverse Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     B.   No Causal Nexus . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

     C.   Plaintiff Cannot Prove Pretext . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

         1.   Plaintiff's 2004 PAR Evaluation . . . . . . . . . . . . . . . . . . . . . . . 19
         2.   Denial of Vacation Request . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

POINT III
PLAINTIFF'S TITLE VII CLAIMS SHOULD BE LIMITED TO THE
ALLEGATIONS RAISED IN HER E.E.O.C. CHARGE  . . . . . . . . . . . . . . . . . . . . . . . 23

POINT IV
PUNITIVE DAMAGES ARE NOT JUSTIFIED  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**CONCLUSION**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## TABLE OF AUTHORITIES

**Page**

### CASES

Aman v. Cort Furniture Rental Corp., 85 F.3d 1074 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 17

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Barber v. CSX Distribution Servs., 68 F.3d 694 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 3

Bronze Shields v. New Jersey Dept. of Civil Serv., 488 F. Supp. 723
     (D.N.J. 1980), mod. 667 F.2d 1074 (3d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Burlington Indus. v. Ellerth, 524 U.S. 742 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Burlington N. & Santa Fe Ry. Co. v. White , 126 S.Ct. 2405 (2006) . . . . . . . . . . . . . . . . . . 8, 14

Castro v. New York City Bd. of Educ. Personnel,
     1998 U.S. Dist. LEXIS 2863 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Celotex Corp.  V. Catrett, 477 U.S. 371 (1986) cert. dismissed, 483 U.S. 1052 (1987) . . . . . . . . 3

Chippollini v. Spencer Gifts, 814 F.2d 893 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

DeLuzio v. Family Guidance Center of Warren, 2010 U.S. Dist. LEXIS 30571
     (D.N.J. March 30, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 4, 5, 6, 8, 22

Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73  (2009) . . . . . . . . . . . . . . . . . . . . . . . . . 25

Equimark Commercial Financial Co. v. C.I.T. Financial Services Corp.,
     812 F.2d 141 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Ferra v. Potter, 324 Fed. Appx. 189 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fireman's Ins. Co. of Newark v. De Fresne, 676 F.2d 965 (3d Cir. 1982) . . . . . . . . . . . . . . . . . 3

Fuentes v. Perskie, 32 F.2d 759 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Furnco Construction Corp. v. Water, 438 U.S. 567 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . 15

Hartsell v. Duplex Products, Inc., 123 F.3d 766 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . 8, 10

International Brotherhood of Teamsters v. United States, 431 U.S. 324 (1977) . . . . . . . . . . . . 18

Jenkins v. Blue Cross Mutual Hospital Insurance Inc., 538 F.2d 164
(7th Cir. 1976), cert. denied 429 U.S. 986 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Jones v. School Dist. of Phila., 198 F.3d 403 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 15

Lang v. New York Life Ins. Co., 721 F.2d 118 (3d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . 3

Le v. Univ. of Pa, 321 F.3d 403, 409 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217 (3d Cir. 2007) . . . . . . . . . . . 3, 9, 12

Martinez v. Bethlehem Steel Corp., 496 F. Supp. 1002 (E.D. Pa. 1979),
aff'd, 633 F.2d 965 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

McDonnell Douglas v. Green, 411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 14, 18

McKinnon v. Gonzales, 642 F. Supp. 2d 410 (D.N.J. 2009) . . . . . . . . . . . . . . . . . . . 8, 12, 15, 22

Miller v. International Telephone and Telegraph Corp., 755 F.2d 20
(2d Cir. 1985), cert. denied 474 U.S. 851 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Moore v. City of Philadelphia, 461 F.3d 331 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . 3, 6, 7, 8, 14

Ostapowicz v. Johnson Bronze Co., 541 F.2d 394 (3d Cir. 1976),
cert. denied, 429 U.S. 1041 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Ridley v. Costco Wholesale Corp., 217 Fed. Appx. 130 (3d Cir. 2007) . . . . . . . . . . . . . . . . . . 23

Ritzie v. City University of New York, 703 F.Supp. 271 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . 24

Rivers v. Potter, 2007 U.S. Dist. LEXIS 92590 (D.N.J. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 8

Robinson v. PFPC, Inc., 2010 U.S. Dist. LEXIS 19303 (E.D.Pa. Mar. 4, 2010) . . . . . . . . . . 16, 17

Sandom v. Travelers Mortgage Services, Inc., 752 F. Supp. 1240 (D.N.J. 1990) . . . . . . . . . . . 23

Sarullo v. United States Postal Serv., 352 F.3d 789 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . 16, 17

Scott v. University of Delaware, 601 F.2d 76 (3d Cir. 1979),
cert. den. 444 U.S. 931 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ii

Shaner v. Synthes (USA), 204 F.3d 494 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Smith v. Wade, 461 U.S. 30 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Torriero v. Olin Corp., 684 F.Supp. 1165 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Trujillo v. University of Colorado Health Sciences Center,
      157 F.3d 1211 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Wilkerson v. New Media Tech. Charter Sch., 522 F.3d 315 (3d Cir. 2008) . . . . . . . . . . . . . . 4, 6

Zalewski v. M.A.R.S. Enterprises, Ltd., 561 F.Supp. 601 (D. Del. 1982) . . . . . . . . . . . . . . . . 23

### STATUTES

42 U.S.C. §1981a(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

42 U.S.C. §2000e-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 21

### RULES

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## PRELIMINARY STATEMENT

In this civil action, Plaintiff Phyllis Atkinson ("Plaintiff"), alleges that Defendant North Jersey Developmental Center ("NJDC") discriminated and retaliated against Plaintiff on the basis of her race (African-American), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). (Yi Cert., Ex. B at ¶¶ 31, 36). Plaintiff alleges that her then-supervisor Carole Wolke[1], a Caucasian Assistant Director of Nursing (now retired) retaliated against her for filing an informal complaint of discrimination against Ms. Wolke in September and/or December 2004. Plaintiff also alleges that Ms. Wolke retaliated against her for filing a formal discrimination complaint with the Department of Personnel and the Equal Employment Opportunity Commission in March and August 2005. (Yi Cert., Ex. B at ¶ 32). Plaintiff also alleges that Defendant NJDC and Ms. Wolke discriminated against Plaintiff on the basis of her race by treating Plaintiff's Caucasian counterparts in a more favorable manner. Ibid. at ¶ 37.

Even viewing the facts in the light most favorable to Plaintiff, Plaintiff cannot establish a *prima facie* case of retaliation under Title VII because she cannot show a causal nexus between a protected act and an adverse act. Additionally, Plaintiff fails to establish a *prima facie* case of disparate treatment based on race because she fails to establish that she suffered an adverse employment action under circumstances indicating racial discrimination. Further, Plaintiff fails to present any evidence that any action or inaction on the part of Defendant NJDC was a pretext for racial discrimination. Therefore, Defendant NJDC respectfully requests that this Court grant

---

[1]Ms. Wolke was named as a defendant in Plaintiff's original Complaint, but all claims against her were previously dismissed with prejudice.

1

Summary Judgment and dismiss Plaintiff's Complaint in its entirety with prejudice.

## LEGAL ARGUMENT

### STANDARD OF REVIEW

Motions for summary judgment pursuant to Fed. R. Civ. P. 56 should be granted if, after reviewing the record and inferences of fact therefrom in a light most favorable to the non-moving party, it can be concluded that there is no genuine issue of material fact to be litigated and the movant is entitled to judgment as a matter of law. Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983). In regard to such a motion, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact. Equimark Commercial Financial Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987) (citing Celotex Corp. V. Catrett, 477 U.S. 371, 373 (1986), cert. dismissed, 483 U.S. 1052 (1987). The movant need only establish that, based on the record, the evidence proffered by the non-movant is insufficient to carry his burden of proof at trial. Chippollini v. Spencer Gifts, 814 F.2d 893, 896 (3d Cir. 1987) (citing Celotex, supra, at 323). Furthermore, in opposing a summary judgment motion, the non-movant may not rest his case on the bare allegations of his pleading. Fireman's Ins. Co. of Newark v. De Fresne, 676 F.2d 965, 969 (3d Cir. 1982). Rather, he must present "specific facts showing that there is a genuine issue for trial." Martinez v. Bethlehem Steel Corp., 496 F. Supp. 1002, 1004 (E.D. Pa. 1979), aff'd, 633 F.2d 965, 969 (3d Cir. 1980). A genuine issue exists only if the evidence proffered by the non-movant party is such that a reasonable fact finder could find for that party. Equimark, 812 F.2d at 144 (citing Anderson v. Liberty, Inc., 477 U.S. 242 (1986)).

In the instant matter, Defendant is entitled to judgment as a matter of law because there are no genuine issues of material facts and no set of operative facts that would enable the Plaintiff to

2

prevail at trial.

## POINT I

### PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION UNDER TITLE VII

In order to establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity, (2) the employer took a materially adverse action against her, and (3) there was a causal connection between the protected activity and the employer's action. LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 231 (3d Cir. 2007). In the instant matter, Plaintiff cannot meet any of the three prongs of a *prima facie* case.

#### A. No Protected Activity

A "protected activity" must take the form of asserting some right otherwise protected by Title VII. " [T]he anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings . . . and those who oppose discrimination made unlawful by Title VII . . . ." Moore v. City of Philadelphia, 461 F.3d 331, 341-42 (3d Cir. 2006). In an analogous case under the ADEA, the court applied Title VII standards to conclude that the plaintiff did not engage in a "protected activity" when he wrote a letter that "expresses his dissatisfaction with the fact that someone else was awarded the position, but it does not specifically complain about age discrimination." Barber v. CSX Distribution Servs., 68 F.3d 694, 701-02 (3d Cir. 1995). See also Ferra v. Potter, 324 Fed. Appx. 189, 192 (3d Cir. 2009) ( "long history of what [plaintiff] perceives to be differential treatment by his supervisors [. . .] is insufficient to satisfy the requirements of "protected activity" under Title VII").

3

In <u>DeLuzio v. Family Guidance Center of Warren County</u>, 2010 U.S. Dist. LEXIS 30571 (D.N.J. 2010), this District Court considered circumstances very similar to the facts alleged by Ms. Atkinson. Specifically, the plaintiff alleged that she had been retaliated against for complaining about "reverse race discrimination." However, the court found that "Plaintiff did not engage in protected activity under Title VII as her complaints centered on workplace conditions that were wholly unrelated to discrimination." <u>Id.</u> at 38. For example, she complained that her supervisor spoke to her in a condescending manner or assigned her to weekend shifts, which, the court found, was "not specifically tied to any discriminatory practices." <u>Id.</u> at 40.

Furthermore, even after the plaintiff began to use the term "discrimination" and later "reverse race discrimination" in memoranda complaining about her supervisor, the court found that simply alleging the supervisor "treated people 'differently'" did "not provide details or facts to explain the alleged disparate treatment." <u>Id.</u> at 41. Such complaints did not qualify as a "protected activity" under Title VII, because "no reasonable person could have believed that the [complained of] conduct . . . violated Title VII . <u>Ibid.</u> <u>See also</u> <u>Wilkerson v. New Media Tech. Charter Sch.</u>, 522 F.3d 315, 322 (3d Cir. 2008) (employee must have "objectively reasonable" belief that the activity she opposes constitutes unlawful discrimination under Title VII). Accordingly, a Plaintiff must do more than use the word "discrimination" to meet the first prong of a retaliation claim.

In her Complaint in this instant matter, Ms. Atkinson alleged that her supervisor, Ms. Wolke, began retaliating against her after Plaintiff made an "informal complaint" of discrimination to the Director of Nursing, Ms. Lotts, in or about September 2004.. (Exh. B, Compl., ¶14). In the course of discovery, Plaintiff pointed to a second letter, sent on or about December 1, 2004, in which she used the word "discrimination" to talk about Ms. Wolke. However, examination of these letters

4

would not lead a "reasonable person" to believe that the complained of conduct violated Title VII. DeLuzio, supra, U.S. Dist. LEXIS at 41. Instead, Plaintiff's letters were attempts by Plaintiff to grieve her workplace differences with her then-supervisor Ms. Wolke.

### 1.    September 28, 2004 Letter

On September 28, 2004, Plaintiff sent a letter of complaint to Roxanne Lotts, the then-Director of Nursing at Defendant NJDC.   In that letter, Plaintiff complained about her final Performance Assessment Rating ("PAR") score, believing she was "scored unjustly on my par" and that she would like to know "what's up with the drop in my score?"  (Defendant's Statement of Material Facts in Support of Motion for Summary Judgment ("SOMF") at ¶ 21).[2] Plaintiff continued in her letter, that she felt that Ms. Wolke "offended me in many ways; she appears to have no regard to the amount of work that I am responsible for doing...[and] demonstrate[s] to me that she has little or no respect for my job duties."  Plaintiff also lamented that she felt that Wolke "has not treated me fairly" and has "shown favoritism to other co-workers."  (Yi Cert., Ex. 1 at *Atkinson EEO 87*).

Plaintiff further explained that she was "overwhelmed with paperwork" and that Ms. Lotts did not realize the "extent of my paperwork."  (SOMF ¶ 22).  Plaintiff admitted, that previously "I never complain about it."  (Yi Cert., Ex. 1 at *Atkinson EEO 88*).  Plaintiff testified at her deposition that she ***did not*** forward a copy of this letter to Ms. Wolke as she intended this letter to be strictly addressed to Ms. Lotts, and Plaintiff had no information that Ms. Wolke ever received this letter. (SOMF ¶ 23).  Ms. Wolke testified at her deposition that she ***did not*** receive Plaintiff's letter as it was sent only to Ms. Lotts.  (SOMF ¶ 24).

Plaintiff's letter of September 28, 2004 does not qualify as a "protected" complaint of

---

[2]       "SOMF" refers to Defendants' Statement of Material Facts.

discrimination. In fact, it does not make any allegation of racial discrimination by Ms. Wolke. Instead, Plaintiff merely attempts to justify a higher PAR score by explaining to Ms. Lotts that she felt "overwhelmed with paperwork" and that her supervisors did not take into account the "extent of [Plaintiff's] paperwork." This letter is merely seeking Ms. Lotts' reconsideration of Plaintiff's PAR score and does so without any reference to racial discrimination.[3]    Plaintiff's allusion to Wolke's "favoritism" towards other co-workers makes no reference to the co-workers' race. All that is evident from reading Plaintiff's September 28, 2004 letter is that she felt overworked and underappreciated. Plaintiff's letter of complaint thus centered on workplace conditions that are "wholly unrelated to discrimination" and accordingly, is insufficient to satisfy the requirements of "protected activity" under Title VII. DeLuzio, supra, 2010 U.S. Dist. LEXIS 30571 at *41.

        **2.    December 1, 2004 Letter**

On December 1, 2004, Plaintiff submitted another letter of complaint to Ms. Lotts, detailing an incident that allegedly occurred between Plaintiff and Ms. Wolke earlier that day. (SOMF ¶ 63). On December 1st, Plaintiff alleged in her letter that Ms. Wolke "rudely blurted out to me that 'I will not be helping you out anymore because I am tried of you calling me a racist.'" (SOMF ¶ 65). Plaintiff further wrote that Ms. Wolke accused her of "calling [Ms. Wolke] a racist" and that if Plaintiff "[kept] calling her a racist she would fix me." Ibid. Plaintiff wrote that she "did not call [Wolke] a racist." Ibid.

Once again, Plaintiff complains about Ms. Wolke to Ms. Lotts, and details an incident between the two wherein Plaintiff admitted raising her voice and being "emotional." (SOMF ¶¶

---

[3]    Ms. Lotts, who supervised Ms. Wolke, approved Wolke's decision to give Plaintiff a score of twenty-four (24) on her 2004 PAR evaluation.

66-67). According to Plaintiff's own version of events, Ms. Wolke somehow thought that Plaintiff had been calling her a "racist," but Plaintiff denied doing so. Plaintiff's denial conforms to her previous letter to Lotts, in which she complained about Wolke without using any language to suggest discrimination or racism.

Then, Plaintiff admits she told Ms. Wolke–during the December 1, 2004 argument-- that she felt that Wolke "discriminates against me *like a racist...*" (Yi Cert., Ex. 12). So in Plaintiff's own words, prior to the December 1, 2004, letter, she herself had not made any claims of racial discrimination to or about Wolke. Even in the December letter, she is equivocal about the term, saying Wolke is "like a racist." This letter is hardly a clear statement of opposition to practices opposed under Title VII. Moore, supra at F.3d at 341-42.

Plaintiff did not get around to making a clear charge of discrimination until she filed a Discrimination Complaint with the New Jersey Department of Personnel on March 29, 2005; and filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 9, 2005. However, only one of Plaintiff's alleged retaliatory acts occurs after March 2005 and none occurs after September 2005. Indeed, even if one accepts Plaintiff's December 1, 2004 letter, in which she used the term "racist" and "discrimination" ambiguously, as a "protected activity," many of the "adverse actions" she alleges precede the supposed complaint. Therefore, even where Plaintiff might meet the first prong of a *prima facie* case, she cannot meet the second and third prongs.

### B.  No Materially Adverse Action and Causal Nexus

The second prong in a *prima facie* case of retaliation requires the plaintiff to show that after

7

her protected activity, the employer took an action that "a reasonable employee would have found . . . 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Moore, 461 F.3d at 341, citing Burlington N. & Santa Fe Ry. Co. v. White , 126 S.Ct. 2405, 2415 (2006).  Furthermore, " 'it is important to separate significant from trivial harms' because an employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience'." Ibid. In particular, allegations about "micromanaging," "increased scrutiny," and "reprimands about plaintiff's lateness," do not meet the standard of "materially adverse actions." McKinnon v. Gonzales, 642 F. Supp. 2d 410, 426 (D.N.J. 2009) (citations omitted).[4] See also DeLuzio, supra, at 43-44 (dismissing plaintiff's claims of "increased scrutiny" and "micromanaging"and citing numerous cases from other districts in support of this proposition). See also Rivers v. Potter, 2007 U.S. Dist. LEXIS 92590 (D.N.J. 2007) (an "official discussion" with plaintiff about his conduct was not a materially adverse action).

Even if a plaintiff can show a materially adverse action, she must further demonstrate a causal nexus between her "protected activity" and the adverse act. To establish such causal linkage, a plaintiff may point to temporal proximity; however, "a gap of three months between the protected

---

[4]     Other Circuits and District Courts have concluded in similar fashion.  Trujillo v. University of Colorado Health Sciences Center, 157 F.3d 1211, 1214 (10th Cir. 1998)("federal law does not guarantee a utopian workplace, or even a pleasant one")(internal quotation and citations omitted); Hartsell v. Duplex Products, Inc., 123 F.3d 766, 773 (4th Cir. 1997)("Title VII does not guarantee a happy workplace, only one free from unlawful discrimination"); Sparrock v. NYP Holdings, Inc., 2008 U.S. Dist. LEXIS 24814, 2008 WL 744733 at *3 (S.D.N.Y. 2008)(finding that "micromanaging" is just a "minor irritant of everyday life and business); Castro v. New York City Bd. Of Educ. Personnel, No. 96 Civ. 6314 (MBM), 1998 U.S. Dist. LEXIS 2863, 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998)(stating that "although reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alternatives of employment conditions").

activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007). Where there is not a close temporal link, the plaintiff must offer some other evidence of causation, such as "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." Id. at 232-233. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Here, Plaintiff fails to demonstrate that Defendant NJDC took any adverse action against her for complaining about Ms. Wolke's conduct. Specifically, Plaintiff alleges the following actions were taken against her: 1) reduction of her 2004 PAR score; 2) Ms. Wolke's "fix me" comment; 3) receiving a "Red A" written warning; 4) vacation request being denied; and 5) having job duties taken away. None of these actions is materially adverse nor is there any causal relationship between any of these actions and a protected activity.

### 1.    "Reduction" of Plaintiff's 2004 PAR Score

Plaintiff received a score of twenty-four (24) on her 2004 PAR evaluation. (SOMF ¶ 14). Plaintiff's 2004 final PAR evaluation was signed by Ms. Wolke on April 23, 2004, approximately five months *prior* to Plaintiff's first complaint to Ms. Lotts about Wolke, dated September 28, 2004. Therefore, Plaintiff's assertion that Defendant NJDC reduced Plaintiff's PAR score as the result of any letter Plaintiff sent complaining about Ms. Wolke–whether a protected activity or not-- is completely without merit.

9

In addition, Plaintiff cannot demonstrate that a PAR score of 24 in 2004 was a materially adverse action. In fact, a 24 is an above average score and actually represented an improvement over her previous final PAR scores of twenty-two (22) and twenty-one (21) for the evaluation periods of 2002-03 and 2001-02. (SOMF ¶¶ 28, 30). Ironically, Plaintiff is complaining about a steady improvement in her performance ratings.

Furthermore, since Plaintiff advised Ms. Lotts on April 23, 2004 that she wanted a meeting to discuss her PAR score, Lotts patiently arranged several meetings, which Plaintiff did not bother to attend. (SOMF ¶ 20). Despite all of the foregoing, Plaintiff's final 2004 PAR score was raised to twenty-seven (27) after Plaintiff finally met with Ms. Lotts. (SOMF ¶ 45).

Clearly, actions that occur before the alleged protected activity and actually improve Plaintiff's employment record cannot be retaliatory acts.

**2.    Ms. Wolke's "Fix Me" Comment on December 1, 2004**

Plaintiff alleges that on December 1, 2004, Ms. Wolke "rudely blurted out to me that 'I will not be helping you out anymore because I am tried of you calling me a racist.'" (SOMF ¶ 65). Plaintiff further wrote that Ms. Wolke accused her of "calling [Ms. Wolke] a racist" and that if Plaintiff "[kept] calling her a racist she would fix me." Ibid. First, Ms. Wolke's alleged comments made in the context of a heated argument wherein Plaintiff's voice was raised and the parties were emotional cannot be categorized as a materially adverse action for purposes of a retaliation claim. See Trujillo, supra, F.3d at 1214 (10th Cir. 1998)("federal law does not guarantee a utopian workplace, or even a pleasant one); Hartsell, supra, F.3d at 773 (4th Cir. 1997)("Title VII does not guarantee a happy workplace, only one free from unlawful discrimination"); Castro, supra, 1998 U.S. Dist. LEXIS 2863 (S.D.N.Y. Mar. 12, 1998)(stating that "although reprimands and close monitoring

10

may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alternatives of employment conditions").

Plaintiff also fails to demonstrate that a causal link exists between her "protected activity" and the adverse act. First, Plaintiff's December 1, 2004, letter was written *after* the alleged "fix me" incident, so Plaintiff cannot point to a causal link between that letter and the incident. (The EEO and EEOC charges came months after the incident.)

Second, as discussed in Point I (A)(1), supra, Plaintiff's September 28, 2004, letter was devoid of any complaint of discrimination and therefore is not a "protected activity." Additionally, Plaintiff testified at her deposition that she ***did not*** forward a copy of this letter to Ms. Wolke as she intended this letter to be strictly addressed to Ms. Lotts, and did not know if Ms. Wolke ever received this letter. (SOMF ¶ 23). Ms. Wolke testified at her deposition that she did not receive Plaintiff's letter as it was sent only to Ms. Lotts. (SOMF ¶ 24).

Accordingly, Plaintiff allegation that Ms. Wolke made the "fix me" comment in retaliation for any "protected activity" is without any merit.[5]

### 3. Red "A" Written Warning

On February 15, 2005, Plaintiff was supposed to start work at 9:00 a.m. (SOMF ¶81). However, she did not arrive at work until 1:30 p.m.(Id. ¶85). At that point, Ms. Lotts had already instructed Ms. Wolke to enter a "red A" on the attendance sheet. (Id. ¶80). In keeping with standard

---

[5]Should Plaintiff allege that Ms.Wolke's use of the phrase "calling me a racist" indicates knowledge of some prior complaints, Plaintiff's own deposition testimony establishes that up to that point she had, at most, gossiped to co-workers about her opinion of Wolke. (SOMF¶¶ 64, 65). Clearly such gossip would not be a "protected activity" for purposes Title VII retaliation.

11

DHS policy, the "red A" was a notation for being absent without calling in. (Id. ¶¶77, 78, 79). A warning notice was also issued to Plaintiff about the absence. (Id. ¶76).

However, when Plaintiff complained that she had attempted to call in around 10:15 a.m. that day, and later around 1:00 p.m., the warning was rescinded and the red A was removed from her attendance record. (Id. ¶¶ 83, 85, 88). This was done even though the usual policy was to require employees to call in at least an hour before the start of the shift to report an absence. (Id. ¶82).

Such actions as "reprimands about plaintiff's lateness," do not meet the standard of "materially adverse action." McKinnon, 642 F. Supp. 2d at 426. In this case, even the "reprimand" was effectively retracted. Furthermore, the gap of more than three months between Plaintiff's December 1, 2004 letter using the word "racist" and the absence warning is sufficient to defeat a claim of temporal nexus. LeBoon, 503 F.3d at 232. (Once again, this warning preceded the filing of Plaintiff's EEO and EEOC charges.)

Therefore, the rescinded "Red A" and attendance warning are not materially adverse actions, nor Plaintiff cannot show a plausible causal link to any protected activity.

### 4.    Vacation Requests "Denied"

Plaintiff's allegations regarding two instances when her vacation requests were "denied" similarly fails to state either a materially adverse act or a retaliatory nexus. Here, again, the vacation requests submitted in March and November 2004 actually precede the December 2004 letter and 2005 EEO/EEOC complaints. The March 2004 vacation request actually preceded *both* of the complaining letters Plaintiff wrote to Ms. Lotts. (SOMF ¶55).

Moreover, Plaintiff was not denied use of her vacation time; she was simply told that she

could not schedule it as she wished because she had waited too late to submit the request. (SOMF ¶¶56, 60). Furthermore, after Plaintiff renewed her November 2004 request, she was allowed to schedule the time as wished. (SOMF ¶62). Thus, Plaintiff did not lose any tangible benefit.

Clearly, no reasonable finder of fact could conclude that there was any connection between Ms. Atkinson's problems in scheduling her vacations constituted retaliation for complaints of discrimination that she had not even filed yet.

### 5.    Job Duties Taken Away

Plaintiff complained repeatedly in the fall of 2004 that she had an overwhelming workload. (SOMF ¶¶ 31-36). Nevertheless, when she returned from a three month medical leave in June 2005, she complained that some of her duties had been taken away. (SOMF ¶101). Plaintiff's letter to Ms. Lotts made it clear that she did not mind having less work; she appears to have complained only that her duties were not exactly the same as before her leave. (Id. ¶102). She also complained that her new supervisor was asking her to report data that she had not reported before, and that many of her computer files were missing. (SOMF ¶¶ 103, 106). She attributed all of these problems to "indirect discrimination and harassment by Ms. Wolke." (SOMF ¶103, 106).

However, a meeting was arranged with Ms. Lotts, Plaintiff and Plaintiff's union representative, at which Ms. Lotts explained that a worker who had taken over some of Plaintiff's duties while she was on leave would continue helping with Plaintiff's tasks only until some backlogs were reduced. (SOMF ¶¶108, 109). Plaintiff was also assured that Ms. Wolke no longer had any role in supervising her and that her computer files were missing because the system had crashed while she was away, destroying many records. (SOMF ¶¶ 110, 111).

Clearly, Plaintiff's slightly altered job duties are, at worst, the types of petty slights and

13

annoyances that all employees can expect to experience from time to time and therefore not materially adverse actions rising to the level of retaliation. See White , 126 S.Ct. at 2415 (2006).

### C.    **Plaintiff Cannot Meet Her Burden of Proof**

Should a plaintiff establish a *prima facie* case of retaliation under Title VII, the claim is then subjected to the same burden-shifting analysis applied in Title VII discrimination claims. Moore, supra, at 342. Specifically, this means that once the plaintiff succeeds in establishing her prima facie case, the burden of production shifts to the defendant to articulate some legitimate, non-discriminatory reason for its actions. McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973). If the defendant is able to successfully articulate such a reason, then the burden shifts back to the plaintiff to show that the defendant's non-discriminatory reason was actually a pretext, and that the real reason for the action was unlawful discrimination. Id. at 802-04. The plaintiff's ultimate burden in a retaliation case is to convince the factfinder that retaliatory intent had a determinative effect on the employer's decision. Shaner v. Synthes (USA), 204 F.3d 494, 501 (3d Cir. 2000).

In the instant matter, only the "red A" incident and the "changed job duties" even follow any form of discrimination complaint by Plaintiff.  Therefore, these are the only two allegations that could even remotely form the basis for a *prima facie*. With regard to these two episodes of alleged "retaliation," Defendant would respectfully direct the Court's attention to the Statement of Material Facts, ¶¶ 71-88 and ¶¶ 101-111. These facts offer ample non-discriminatory reasons for Defendant's actions.

Indeed the record on these occasions illustrates that Defendant and its supervisory employees repeatedly went out of their way to mollify Plaintiff and correct even small perceived slights.  Such behavior from an employer would not have "dissuaded a reasonable worker from making or

14

supporting a charge of discrimination.'" Moore, 461 F.3d at 341.   To the contrary, a reasonable factfinder might conclude that Plaintiff actually benefitted from her complaints, repeatedly winning concessions, such as lighter job duties or relaxation of the attendance policy.   Plaintiff thus cannot meet her burden to prove that Defendant's actions were determined by retaliatory animus.

## POINT II

### PLAINTIFF CANNOT MEET HER BURDEN OF PROOF IN SUPPORT OF HER DISCRIMINATION CLAIM

A *prima facie* case of disparate treatment on the basis of race requires that a plaintiff offer sufficient evidence (1) that [s]he is a member of a protected class; and (2) that [s]he suffered some form of adverse employment action; (3) under circumstances that give rise to an inference of unlawful discrimination. Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-319 (3d Cir. 2000) (citation omitted). If a *prima facie* case is established, it is then subjected to the McDonnell Douglas burden-shifting analysis. Id. at 319.

Here, it is not disputed that, as an African-American, Ms. Atkinson is a member of a "protected class" as defined by Title VII.   However, she cannot show that she was subjected to an adverse employment action or that the circumstances of any action she alleges give rise to an inference of discrimination.   Furthermore, even if she could meet the second and third prongs of a *prima facie* case, she cannot discredit Defendant's legitimate reasons for its actions and show, by a preponderance of the evidence, that the reasons offered were merely pretexts.

A.   **No Adverse Action**

Although, "something less than a discharge could be an adverse employment action," a plaintiff must be able to point to a significant action, such as demotion, involuntary transfer, or loss

15

of other tangible benefits in order to sustain a discrimination claim under Title VII. Jones v. School Dist. of Phila., 198 F.3d 403, 411-12 (3d Cir. 1999). See also Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998) (defining an "adverse" or "tangible" employment action as "a significant change in employment status, such has hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.")

It should also be emphasized that, for purposes of Title VII, the "adverse action" required for discrimination claims is a significantly higher standard than the "materially adverse" action defined in retaliation claims: the latter is defined "more broadly as one that is 'likely' to 'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" McKinnon v. Gonzales, 642 F. Supp. 2d 410, 435 (D.N.J. 2009) (citation omitted). However, in order to sustain a discrimination claim,

> an adverse employment action must be one that produces a material employment disadvantage. Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard, as would circumstances amounting to a constructive discharge. Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage do not satisfy the prong.

Id. (citations omitted). "Furthermore, not every 'insult, slight, or unpleasantness gives rise to a valid Title VII claim.'" DeLuzio, supra, at 27.

### B.    No Causal Nexus

Even assuming, *arguendo*, that Plaintiff could point to a tangibly adverse employment action, she still "must establish some causal nexus between [her] membership in a protected class" and the adverse employment decision complained of. Sarullo v. United States Postal Serv., 352 F.3d 789,

16

798 n.7 (3d Cir. 2003); Robinson v. PFPC, Inc., 2010 U.S. Dist. LEXIS 19303(E.D. Pa. Mar. 4, 2010). "An example of a circumstance that can raise an inference of discrimination may be found when a similarly-situated employee outside of the protected class is treated differently from the plaintiff." Robinson, supra (citation omitted). In this context, "similarly situated," means persons, outside the protected class, with qualifications and job duties similar to the plaintiff's. See Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1087 (3d Cir. 1996) (Title VII disparate treatment claim properly dismissed because plaintiffs "did not provide any evidence to demonstrate that the jobs performed by the white employees were the same or that the employees had similar credentials").

## C.   **Plaintiff Cannot Prove Pretext**

In those cases where a *prima facie* case is established, Plaintiff creates a "rebuttable presumption that the employer unlawfully discriminated." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1980). The burden of *production* (not the burden of proof) then shifts to the employer to rebut the prima facie case by "articulat[ing] some legitimate, nondiscriminatory reason for the employee's rejection." Id. at 255; McDonnell Douglas, 411 U.S. at 802.

The employer's burden is "relatively light" Fuentes v. Perskie, 32 F.2d 759, 763 (3d Cir. 1994), and does not oblige the employer to persuade a court that it was actually motivated by the proffered reasons. Defendants are only required to set forth a nondiscriminatory motive. Burdine, 450 U.S. at 257. See also Fuentes, supra, 32 F.2d at 763 ("the employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision").

If a defendant can successfully rebut the *prima facie* case through presentation of legitimate,

17

nondiscriminatory reasons for the employment action, Plaintiff then must prove, by a preponderance

of the evidence, that the alleged legitimate reasons articulated by defendant were not the true reasons

behind the action, but were merely pretexts for discrimination.   Burdine, supra, 450 U.S. at 253

(citing McDonnell Douglas, 411 U.S. at 804).   The Plaintiff must submit evidence which:

> (1) casts sufficient doubt upon each of the legitimate reasons
> proffered by the defendant so that a fact finder could reasonably
> conclude that each reason was a fabrication; or (2) allows the fact
> finder to infer that discrimination was more likely than not a
> motivating factor or determinative cause of the adverse employment
> action.

Fuentes, supra, 32 F.2d at 762.  See also St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742 (1993);

Furnco Construction Corp. v. Water, 438 U.S. 567 (1978).

Moreover, in a disparate treatment case, "...[p]roof of discriminatory motive is *critical*..."

International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977) [emphasis

supplied].

> To discredit the employer's proffered reason, however, the plaintiff
> cannot simply show that the employer's decision was wrong or
> mistaken, since the factual dispute at issue is whether discriminatory
> animus motivated the employer, not whether the employer is wise,
> shrewd, prudent, or competent. Rather, the nonmoving plaintiff must
> demonstrate such weaknesses, implausibilities, inconsistencies,
> incoherences, or contradictions in the employer's proffered legitimate
> reasons for its action that a reasonable fact finder could rationally find
> them "unworthy of credence," and hence infer "that the employer did
> not act for [the asserted] non-discriminatory reasons."

Fuentes, supra, at 765(citations omitted).  See also  Scott v. University of Delaware, 601 F.2d 76,

80-81 (3d Cir. 1979), cert. den. 444 U.S. 931 (1979); Bronze Shields v. New Jersey Dept. of Civil

Serv., 488 F. Supp. 723, 731 (D.N.J. 1980), mod. 667 F.2d 1074 (3d Cir. 1981).

Plaintiff fails to proffer sufficient evidence that she suffered any "adverse employment actions" linked to unlawful discrimination in support of her claim of disparate treatment on the basis of her race. Plaintiff alleges that Caucasian co-workers were treated in a more "favorable" fashion that Plaintiff because: 1) they had higher PAR evaluation scores, 2) vacation requests granted, 3) and were provided with new desks and computers. (SOMF ¶¶ 39, 46, Yi Cert. Ex D).

### 1.   Plaintiff's 2004 PAR Evaluation

Plaintiff alleges that several Caucasian co-workers, specifically Donna Corrado and Michael Buongiorno, received higher PAR scores from Ms. Wolke because of their race. (SOMF ¶ 40). However, Ms. Corrado and Mr. Buongiorno were not in a similar job title (Principal Clerk Typist) as Plaintiff, as Ms. Corrado and Mr. Buongiorno were nurses, and had completely different job duties than Plaintiff. (SOMF ¶ 41). More importantly, Plaintiff did not know what PAR evaluation scores these individuals received, nor did they directly tell Plaintiff their respective PAR scores. (SOMF ¶ 42). Instead, Plaintiff simply surmised what their scores were by whether they were "happy with their rating," even though she never saw their PAR scores and had no idea what score they received. (SOMF ¶ 43). Plaintiff's PAR evaluation score for 2004 was eventually raised from twenty-four (24) to twenty-seven (27) and she was "happy" with the score. (SOMF ¶ 45).[6]

Here, Plaintiff fails to allege any "adverse employment action" taken by Defendant NJDC nor can she prove any disparate treatment. First, Plaintiff's 2004 final PAR score was raised from twenty-four (24) to twenty-seven (27) after she met with Ms. Lotts. Second, Plaintiff's score of

---

[6]   Plaintiff's contention that Ms. Wolke's giving Plaintiff a PAR score of twenty-four (24) is evidence of disparate treatment based upon her race is also simply confounding as that score represented an improvement over her previous final PAR score of twenty-two (22) and twenty-one (21) for the evaluation periods of 2002-03 and 2001-02. (SOMF ¶¶ 28, 30).

twenty-four (24) represented an *improvement* over her previous final PAR scores for 2002 and 2003. Third, Ms. Corrado and Mr. Buongiorno held different job titles and functions (nurses) than Plaintiff (principal clerk typist), and are not similarly-situated comparators. Finally, Plaintiff admits she has *no knowledge* of what PAR scores Ms. Corrado and Mr. Buongiorno received.

Defendant NJDC has proffered legitimate, nondiscriminatory reasons for issuing her PAR score in 2004. Ms. Wolke, commented in Plaintiff's final 2004 PAR, in the section "Specified Areas Identified for Development" and "Specific Action to be Taken by [Plaintiff]" that Plaintiff needed to improve the following: 1) improve "communication with supervisor;" and 2) input needs to be current in the computer and reviewed quarterly for any update." (SOMF ¶ 14). Plaintiff's previous supervisor also noted in Plaintiff's 2003 final PAR in the same section: 1) "continue entering clients…admissions data into Health Care Center computer;" 2) "enter required personal data pertinent to NJDC clients, please complete by the end of quarter." Plaintiff signed-off on the PAR, her agreement with the final score of twenty-three (23). (SOMF ¶¶ 27, 28). Plaintiff's 2002 final PAR noted in the "specific areas identified for development" section of the PAR that Plaintiff need to improve the following: 1) "add or delete clients in computer within first quarter of year;" 2) "record data when received;" and to 3) "update campus data sheets into Health Care Center computer." Plaintiff signed-off on the PAR, noting her agreement with her final score of twenty-one (21). (Yi Cert., Ex. 7 at *Atkinson PERS 103*). However, Plaintiff testified that she did not "read the PAR" but just "looked at the score." (SOMF ¶ 26).

Plaintiff was consistently apprised in her PARs over the course of three years to improve her input of information into the Center's computer. In deciding Plaintiff's PAR score for 2004, Ms. Wolke took into account Plaintiff's job responsibilities as detailed in her PAR. Ms. Wolke observed

that Plaintiff made errors with client appointments which resulted in missed appointments, clients being unable to see specialists, information not being relayed to transport clients, which resulted in undue stress for the clients. (SOMF ¶ 15). Ms. Wolke also noted that Plaintiff's prior supervisor previously noted that Plaintiff was instructed to input client data into the computer system, but found that Plaintiff did not do so and accordingly, could not award her with a score of twenty-seven." (SOMF ¶¶ 16-17). Plaintiff's 2004 PAR score issued by Ms. Wolke still represented a score higher than her previous PAR scores in 2002 and 2003. Yet, Plaintiff did not complain about receiving differential treatment on the basis of her race in those years. Plaintiff simply differs with her employer's assessment of her work, but cannot point to any discriminatory animus by Defendant in her PAR evaluation. Accordingly, Defendant has proffered legitimate, non-discriminatory reasons for issuing Plaintiff's 2004 PAR score and Plaintiff has failed to prove a *prima facie* case of disparate treatment based on her race.

### 2.   Denial of Vacation Request

Plaintiff alleges that "non-African American counterparts'" requests for vacation were granted in 2004, while her request was denied by Ms. Wolke. (Yi Cert., Ex. B at ¶ 16). Per Defendant's practice, annual vacation requests were to be submitted by employees to their supervisors no later than March 15, 2004. However, Plaintiff submitted a vacation request form, which was dated March 22, 2004, but received on March 30, 2004, by Ms. Lotts. (SOMF ¶ 55). Failure to submit a timely vacation request was a grounds for denial of a vacation request. (SOMF ¶ 56). Subsequently, on November 19, 2004, Plaintiff requested compensatory time-off for November 23, 24, 29, and 30, 2004. Plaintiff's request was denied by Ms. Wolke on November 19, 2004, because Plaintiff failed to follow procedure in filing a timely vacation request, and because

21

there was a lack of staff coverage due to timely vacation requests made by other staff members for the same time period. (SOMF ¶ 60). Specifically, Ms. Corrado's and Michael Buonagurio's "annual" vacation requests were granted because they submitted timely requests for vacation prior to March 15, 2004. (SOMF ¶ 61).

Plaintiff simply believed that she was entitled to her "annual vacation time" because her vacation time never "changed over all the years," and was like "clock-work," and would be automatically granted even though she had to make a formal request for vacation days. (SOMF ¶ 59). Nonetheless, Plaintiff's request for vacation for November 23, 24, 29, and 30, 2004, were nonetheless granted. (SOMF ¶ 62). Ms. Wolke's initial denial of Plaintiff's vacation request for November 2004 is not an "adverse action" because it was at best, a minor disruption in getting approval for her vacation and not an action taken against her that "produce[d] a material employment disadvantage." McKinnon, supra, F. Supp. 2d at 435. Plaintiff may have felt perturbed, insulted, or slighted when she re-applied for her November 2004 vacation request on November 19, 2004. However, such "unpleasantness" does not give rise to a valid Title VII claim.'" DeLuzio, supra, at 27.

Plaintiff's assertion that her Caucasian co-workers, specifically Ms. Corrado and Mr. Buongornio, were granted annual vacation requests on the basis of their race is unsupported. Ms. Corrado and Mr. Buongornio were treated differently because they acted differently than Plaintiff because they complied with Defendant NJDC's requirement that such requests be *received* by March 15, 2004. Plaintiff submitted her request a full two weeks *after* the deadline and accordingly, denial of the late request, contrary to Plaintiff's unsupported assertion that her vacation should be granted like "clock-work," was appropriate. Nonetheless, Plaintiff's request for vacation time in November

22

2004 was granted by Defendant NJDC.

Defendant NJDC has proffered legitimate, non-discriminatory reasons for initially denying Plaintiff's late vacation request and Plaintiff has failed to prove a *prima facie* case of disparate treatment based on her race.

## POINT III

## PLAINTIFF'S TITLE VII CLAIMS SHOULD BE LIMITED TO THE ALLEGATIONS RAISED IN HER E.E.O.C. CHARGE

Before a Title VII claim may be maintained in federal court, a charge must be filed against a party with the Equal Employment Opportunity Commission ("EEOC"). Sandom v. Travelers Mortgage Services, Inc., 752 F. Supp. 1240 (D.N.J. 1990). "The parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976), cert. denied, 429 U.S. 1041 (1977). Thus, a subsequent civil action may only encompass forms of discrimination similar or related to those filed in the EEOC charge. Jenkins v. Blue Cross Mutual Hospital Insurance Inc., 538 F.2d 164, 167 (7th Cir. 1976), cert. denied 429 U.S. 986 (1976); Torriero v. Olin Corp., 684 F.Supp. 1165, 1170 (S.D.N.Y. 1988), (Court found that the facts alleging sexual harassment could not be inferred from the allegations in the EEOC charge and prohibited the sexual harassment charge); Zalewski v. M.A.R.S. Enterprises, Ltd., 561 F.Supp. 601 (D. Del. 1982).

Certain claims of discrimination in the workplace, not filed in the EEOC charge, have

23

been determined not to be similar, nor related, to a form of employment discrimination which was included in the administrative complaint. See, e.g., Miller v. International Telephone and Telegraph Corp., 755 F.2d 20, 25-26 (2d Cir. 1985), cert. denied 474 U.S. 851 (1985) (claim of failure to re-hire is sufficiently distinct from claim in the EEOC charge alleging discriminatory discharge); Ritzie v. City University of New York, 703 F.Supp. 271, 278-79 (S.D.N.Y. 1989) (administrative complaint filed before state agency, which only detailed instances of alleged discrimination involving another co-worker and within a discrete time period, was not reasonably related to a subsequent claim alleging discriminatory job demotion).

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 9, 2005.  Specifically, Plaintiff alleged that she was subject to discrimination based on race and retaliation, and claimed that Ms. Wolke was the alleged perpetrator.  Plaintiff listed the following incidents in support of her allegation of discrimination/retaliation: 1) reduction of her performance evaluation in September 2004 by Ms. Wolke; 2) comments allegedly made by Ms. Wolke that Plaintiff perceived as retaliatory; 3) receiving a written warning on February 14, 2005, for her failure to appear for work; and 4) having her job duties taken from her when she returned from sick leave in June 2005.  Plaintiff also listed that the "earliest" the alleged discrimination/retaliation occurred was February 14, 2005, and that the "latest" occurrence was June 1, 2005.  Plaintiff did not indicate that the alleged discrimination was a "continuing action."  (SOMF ¶ 3).

Plaintiff claims in her Second Amended Complaint that occurred prior to the February 14, 2005, should be barred as Plaintiff listed in her EEOC Charge of Discrimination that the earliest date of alleged discrimination commenced February 14, 2005.  Likewise, Plaintiff's claims of

alleged discrimination/retaliation that occurred after June 1, 2005, should also be barred.

## POINT IV

## PUNITIVE DAMAGES ARE NOT JUSTIFIED

Punitive damages are not awarded as compensation for injury. The purpose of punitive damages is punishment and deterrence. They are only available if the defendant's conduct has been particularly egregious. Smith v. Wade, 461 U.S. 30, 52(1983) (articulating standard for constitutional violations under 42 U.S.C. §1983). Punitive damages are never awarded as of right, no matter how outrageous the defendant's behavior. Ibid. An award of punitive damages is not proper unless it is shown that the defendant's conduct is "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Id. at 56.

In cases brought under Title VII, a "plaintiff may recover punitive damages for intentional discrimination where 'the complaining party demonstrates that the respondent engaged in . . . discriminatory practices with malice or with reckless indifference to . . . federally protected rights.' Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 79 n. 2 (2009) (citing 42 U.S.C. §1981a(b)(1). Le v. Univ. of Pa, 321 F.3d 403, 409 (3d Cir. 2005). However, the plaintiff must produce "sufficient evidence" to support such a claim: she may not rely upon conclusory allegations. Ibid. In addition, "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good-faith efforts to comply with Title VII.' " Ridley v. Costco Wholesale Corp., 217 Fed. Appx. 130, 138 (3d Cir. 2007).

25

Plaintiff fails to demonstrate "intentional discrimination" that was conducted by Defendant NJDC with "malice or with reckless indifference to" to Plaintiff's rights as secured under Title VII. To the contrary, the record is replete with Defendant NJDC's efforts to address Plaintiff's various complaints as well as Defendant NJDC's decisions to increase Plaintiff's 2004 PAR score, rescind the "Red A" written warning, and grant Plaintiff's November 2004 vacation time request. These actions demonstrate Defendant NJDC's efforts to address Plaintiff's allegations of discrimination and institute any corrective measures, when needed. Therefore, punitive damages should not be awarded against Defendant NJDC.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.

Respectfully submitted,

PAULA T. DOW
Attorney General of New Jersey
Attorney for Defendant NJDC

By:     s/David Yi
David Yi
Deputy Attorney General

Dated: May 21, 2010

26