PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
P.O. Box 112
25 Market Street
Trenton, New Jersey  08625-0112
Attorney for Defendant
        North Jersey Developmental Center


By:    David Yi
       Deputy Attorney General
       (609) 292-9989
       david.yi@dol.lps.state.nj.us

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

—————————————————————————
PHYLLIS ATKINSON                          :
                                          :       Civil Action No.
                                          :       07-04326 (PGS-ES)
                   Plaintiff,             :
                                          :
       v.                                 :
                                          :
NORTH JERSEY DEVELOPMENTAL                 :
CENTER,                                    :
                                          :
                                          :
                   Defendant.             :
—————————————————————————                 :


**REPLY BRIEF IN SUPPORT OF DEFENDANT, NORTH JERSEY DEVELOPMENTAL
CENTER'S MOTION FOR SUMMARY JUDGMENT**


David Yi, D.A.G.
 On the Brief

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I

PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT IS NOT
SUPPORTED BY GENUINE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT II

PLAINTIFF HAS NOT STATED A *PRIMA FACIE* CASE OF
RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII. . . . . . . . . . . . . . 4

A.       No Tangible Adverse Action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B.       No Evidence That "Similarly Situated" Employees Outside
         Plaintiff's Protected Category Received Preferential
         Treatment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

C.       No Evidence of a Hostile Work Environment. . . . . . . . . . . . . . . . . . . 7

POINT III

PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF
RETALIATION UNDER TITLE VII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

A.       No Protected Activity.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

B.       No Materially Adverse Action Taken Against Plaintiff by
         Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

C.       No Causal Nexus and Defendant NJDC Has Proffered
         Legitimate Non-Discriminatory Reasons for Alleged Actions
         Taken Against Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

<u>AMTRAK v. Morgan</u>, 536 U.S. 101 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469 (3d Cir 1990). . . . . . . . . . . . . . . . . . . . . . . 8, 9

<u>Berkeley Inv. Group, LTD v. Colkitt</u>, 455 F.3d 195 (3d Cir. 2006). . . . . . . . . . . . . . . . . . . . . 1

<u>Boca Raton</u>, 524 U.S. 775 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . 4-6

<u>Burlington Northern & Santa Fe Ry. v. White</u>, 548 U.S. 53 (U.S. 2006). . . . . . . . . . . . . . . 12, 16

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

<u>Colon-Fontanez v Municipality of San Juan</u> 671 F. Supp. 2d 300 (D.C.P.R. 2009). . . . . . . . . . . 9

<u>Davis v. City of Newark</u>, 285 Fed. Appx. 899 (3d cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>EEOC  v. Metal Serv. Co.</u>, 892 F.2d 341 (3d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

<u>Jiminez v. All American Rathskeller, Inc.</u>, 503 F. 3d 247 (3d Cir. 2007). . . . . . . . . . . . . . . . . 1, 2

<u>LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n</u>, 503 F.3d 217 (3d Cir. 2007). . . . . . . . . . . . 10, 17

<u>Martin v. Merrell Dow Pharmaceuticals, Inc.</u>, 851 F.2d 703 (3d Cir. 1988). . . . . . . . . . . . . . . 2, 3

<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 17

<u>McKinnon v. Gonzales</u>, 642 F. Supp. 2d 410 (D.N.J. 2009). . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

<u>Moore v. City of Philadelphia</u>, 461 F.3d 331 (3d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . 11-14

<u>Nemours and Company</u>, 100 F.3d 1061 (3rd Cir.)(en banc) <u>cert</u>. <u>denied</u>,
117 S.Ct. 2532 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 18

<u>Perma Research & Development Co. v. Singer Co.</u>, 410 F.2d 572  (2d Cir. 1969). . . . . . . . . . . . 1

ii

Santa Fe Ry. Co. v. White, 126 S. Ct. 2405  (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Spain  v. Gallegos, 26 F.3d 439 (3d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

**STATUTES**

42 U.S.C. 2000e- 2(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

**RULES**

Fed.R.Civ.P. 56(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Fed.R.Civ.P. 56(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 7

iii

## LEGAL ARGUMENT

### POINT I

### PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT IS NOT SUPPORTED BY GENUINE FACTS

Pursuant to Fed.R.Civ.P. 56(a), a party opposing summary judgment must "rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berkeley Inv. Group, LTD v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) (citations omitted). See also Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

Moreover, affidavits submitted in opposition to the motion must be limited to statements of fact within the personal knowledge of the affiant, which would be admissible at time of trial. Fed.R.Civ.P. 56(e) "Argument of the facts and the law shall not be contained in the affidavits [. . . and] will be disregarded by the Court." L.R.Civ. 7.2(a).

It is equally improper for a plaintiff to offer sham "facts" supported solely by her own affidavit.  "[I]f it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate." Jiminez v. All American Rathskeller, Inc., 503 F. 3d 247, 253 (3d Cir. 2007).

In particular, the Court should disregard an affidavit that seeks to contradict or amend prior deposition testimony. "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Perma Research & Development Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir.

2

1969).

The presumption underlying the "sham affidavit doctrine," is that "prior depositions are more reliable than affidavits [. . .] 'since the deponent was either cross-examined by opposing counsel, or at least available to opposing counsel for cross-examination.'" Jiminez, supra, 503 F.3d at 253 (citation omitted). "When, as in the present case, the affiant was carefully questioned on the issue, had access to the relevant information at that time, and provided no satisfactory explanation for the later contradiction, the courts of appeals are in agreement that the subsequent affidavit does not create a *genuine* issue of material fact." Martin v. Merrell Dow Pharmaceuticals, Inc., 851 F.2d 703,706 (3d Cir. 1988).

In the instant matter, Plaintiff's opposition to summary judgment relies almost entirely on assertions that are supported by no fact of record. Plaintiff not only fails to support her arguments with specific citations, she implicitly relies, again and again, on sham affidavits. Plaintiff's own affidavit repeatedly contradicts her prior deposition testimony and, like the affidavits of her witnesses, is filled with inadmissible hearsay and opinion.

Defendant's Reply Statement of Facts details the many deficiencies and improprieties in Plaintiff's submissions. However, the some of the most egregious examples merit emphasis here.

In her deposition, Plaintiff was clearly and specifically asked whether she had met with Ms. Lotts, the Director of Nursing, on multiple occasions to discuss the issues raised in her Complaint, and Plaintiff clearly and specifically answered, "No. Only . . . the meeting that I called [about the 2004 PAR]." (Yi Cert., Exh. A, Atkinson Dep. 53:4-12). Yet, in her Affidavit opposing summary judgment, Plaintiff conjures up *three* additional meetings with Mrs. Lotts .

3

Plaintiff now claims that she had a private meeting with Ms. Lotts prior to the joint meeting with Carole Wolke on September 28, 2004. (Pltf Additional Facts ¶140). This claim contradicts not only Plaintiff's prior deposition testimony, but the contents of her March 28, 2005 letter, which was authenticated at her deposition. (Yi Cert., Exh.2).

In addition, Plaintiff now claims she had a lengthy meeting with Ms. Lotts on November 19, 2004, to discuss Ms. Wolke's denial of her vacation request.  (Plaintiff's Affidavit ¶13 ). Plaintiff attributes hearsay statements to Ms. Lotts and double-hearsay statements to Ms. Wolke in connection with this alleged meeting. (Id.)

Plaintiff also now asserts that she had a brief meeting with Ms. Lotts "during the last two weeks of February 2005," at which time Plaintiff allegedly reported abuse of time and attendance policy by white employees and disparate enforcement of discipline by Ms. Wolke. (Pltf Aff. ¶25). Plaintiff attributes additional hearsay statements to Ms. Lotts at this meeting. (Id.)  These assertions in Plaintiff's Affidavit, which directly contradict her deposition testimony regarding meetings with Ms. Lotts, are improper and should be disregarded.

Plaintiff was also repeatedly asked in deposition to identify all incidents of disparate treatment based upon race that were relevant to her claims. At no time did she mention falsified time records or disparate enforcement of attendance policies against African-American employees. (Atkinson Dep. 88:10- 89:5; 99:16- 101:13; 129:18- 133:12).  Once again, Plaintiff's new, self-serving allegations are improper and should be disregarded.

Similarly, Plaintiff repeatedly testified in deposition that she did not see Registered Nurse Donna Corrado's PAR or ask her specific questions about her score, but simply made assumptions

4

based upon the fact that Corrado seemed happy with her rating. (Yi Cert., Exh. A, 91:2- 92:7). Now, Plaintiff suddenly asserts that she "specifically asked and was told by Ms. Corrado that her PAR score had not been lowered." (Pltf Counter SOMF ¶43).  This allegation also should be disregarded as it is supported only by a sham affidavit and contradicts prior testimony.

 Plaintiff's new claims, allegations and hearsay attributions, which are a clear abuse of the sham affidavit doctrine and the Rules of Civil Procedure, should not be allowed to defeat summary judgment.

## <u>POINT II</u>

### PLAINTIFF HAS NOT STATED A *PRIMA FACIE* CASE OF <u>RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII</u>

A claim of disparate treatment in violation of 42 U.S.C. 2000e- 2(a) requires proof of a "tangible" discriminatory action by the employer, or a supervisor acting with the authority of the employer, which causes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 761- 62 (1998).

In the absence of a such tangible employment actions, a plaintiff may offer proof of a "hostile work environment."  Such a claim requires evidence of harassment so "severe or pervasive" as to make a "reasonable" person believe that her working conditions were intolerable. <u>Faragher v.City of Boca Raton</u>, 524 U.S. 775, 786 (1998) (citations omitted). <u>See</u> <u>also</u> <u>AMTRAK</u> <u>v. Morgan</u>, 536 U.S. 101, 116 , n. 10 (2002)(applying <u>Faragher</u> criteria to race-based claims).

Whether alleging a tangible adverse action or a hostile environment, the plaintiff has the burden of proof to establish a causal connection between her protected category and the complained-of conduct. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Spain v. Gallegos, 26 F.3d 439, 447 (3d Cir. 1994);  EEOC v. Metal Serv. Co., 892 F.2d 341, 347 (3d Cir. 1990).  In the instant matter, Plaintiff can offer no proof that she suffered either a tangible adverse action or a hostile work environment as a result of her race.

### A.    No Tangible Adverse Action

A"tangible employment decision requires an official act of the enterprise, a company act" and "in most cases inflicts direct economic harm." Ellerth, supra, 524 U.S. at 762. The only "official actions" that Plaintiff objects to are as follows: a slight reduction in her performance rating from one cycle to the next, which was raised when Plaintiff objected (Deft SOMF ¶¶21-25, 45); initial difficulty in obtaining some of her requested vacation dates, which were granted when Plaintiff objected (Id. ¶¶ 55-62);  3) a "red A" mark for being absent without calling in, which was rescinded (Id. ¶¶ 76-85, 88); a reduction in her workload after she complained of "overload" and returned from an extended "stress" leave (Id. ¶¶101, 102, 109).  None of these actions rise to the level of tangible adverse action as a matter of law.

Furthermore, Plaintiff has offered no evidence that any action she complains about was motivated by intentional discrimination based upon her race.  Plaintiff offers only her subjective belief that her conflicts with one of her supervisors, Carol Wolke, stemmed from the fact that Wolke, who is Caucasian, "behaved like a racist." However, Wolke has already been dismissed from this action because here is no individual liability under Title VII . See Sheridan v. E.I.

6

<u>DuPont de Nemours and Company</u>, 100 F.3d 1061 (3rd Cir.)(en banc) <u>cert</u>. <u>denied</u>, 117 S.Ct.

2532 (1996).

Even if Plaintiff's allegations against were supported by any facts of record, as they are

not,  Plaintiff cannot show that any actions alleged against Wolke became an"official act of the

enterprise, a company act" for purposes of an employment discrimination claim. <u>See</u> <u>Ellerth</u>,

<u>supra</u>.  To the contrary, the record shows that whenever Plaintiff objected to Wolke's decisions,

the employer rescinded or modified those decisions.  Furthermore, after Plaintiff reported

conflicts with Wolke, Defendant NJDC went so far as to assign Plaintiff a new supervisor, who,

Plaintiff admits, did not intentionally discriminated against her. ( SOMF  ¶¶89, 90 )[1].  Plaintiff is

therefore unable to identify any tangible acts of discrimination that would attach liability to

Defendant NJDC.

**B.    No Evidence That "Similarly Situated" Employees Outside**
**Plaintiff's Protected Category Received Preferential Treatment**

As Defendant's moving brief and Statement of Material Facts demonstrate, Plaintiff has

failed to identify any "similarly situated" employee of a different race who received more

favorable treatment than she did.  Plaintiff's resentment of a particular registered nurse, Donna

Corrado, is irrelevant since Plaintiff, as a clerk transcriber, was in a very different job title.

(SOMF ¶ 7).  Moreover, despite Plaintiff's attempt to revise her testimony by submitting a sham

affidavit, Plaintiff has admitted that she has no first hand knowledge to support her claim that

Corrado–or any other Caucasian employee Plaintiff has named–received a better performance

rating than Plaintiff did or any other benefit that was denied to Plaintiff. (SOMF ¶¶ 40-42).

---

[1] "SOMF" refers to Defendant's Statement of Material Facts.

7

Now, in an obvious maneuver to avoid summary judgment, Plaintiff and her witnesses offer vague, hearsay statements alleging a broad practice of disparate treatment against African-Americans.   This tactic is objectionable and improper, first, because no such allegations were pled in Plaintiff's Complaint or Amended Complaint.  Thus, Plaintiff's attempt to interject them now should be barred pursuant to Fed. R. Civ. P. 8(a) and Fed. R. Civ. P. 9(f).

Second, as is set forth detail in Defendant's Reply to Plaintiff's Counter-statement of Facts and Point I, supra, of this brief, the new allegations and hearsay offered by Plaintiff and her witnesses violate Fed.R.Civ.P. 56(e) and L.R.Civ. 7.2(a) and should therefore be disregarded. Moreover, these new statements contradict prior deposition by Plaintiff (Atkinson Dep. 88:10-89:5; 99:16- 101:13; 129:18- 133:12); a prior signed statement by one of the witnesses (Deft Reply SOMF ¶¶ 148, 149, 156); and contradict each other on such basic facts as the year when a meeting supposedly occurred. (Id. ¶¶ 148-149).

Plaintiff should not be allowed to create sham issues of fact by violating the Court rules and offering only inadmissible, self-contradictory statements in support of her new claims. Accordingly, all allegations regarding adverse treatment of other, unnamed African-American employees of NJDC should be disregarded and dismissed.

## C.   No Evidence of a Hostile Work Environment

Plaintiff's inability to offer evidence of intentional discrimination also means that she is unable to meet the first prong of a "hostile work environment" claim, which requires proof that the alleged harassment occurred "because of" the employee's protected category. Spain, supra, 24 F.3d at 447.  Here, there is not even the bare allegation of  racial slurs or other evidence that

would link any allegedly objectionable behavior to Plaintiff's race.

Even if Plaintiff could meet the first prong of a hostile work environment claim, she cannot offer evidence of a workplace "permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment' and create an 'abusive working environment," as she must do to prevail on a hostile work environment claim.   Faragher, 524 U.S. at 116, citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). Moreover, the alleged abusive treatment must be judged "by the totality of the circumstances," and by the standard of a "reasonable"  minority employee's reaction, not merely the subjective reaction of the plaintiff.  Andrews v. City of Philadelphia, 895 F.2d 1469, 1483 (3d Cir 1990).  Here, although Plaintiff uses the term "hostile work environment" in her EEOC charge and from time to time in her brief, she has not identified any actions that would support such a claim.

Aside from the minor "adverse employment actions" discussed under Point II, A, supra, Plaintiff alleges only a few random incidents, spread over a period of years.  For example, Plaintiff claims that on a single occasion, Wolke "rudely blurted out to me that 'I will not be helping  you out anymore because I am tried of you calling me a racist.'" (SOMF ¶65). Plaintiff also alleges that on one occasion Wolke told Plaintiff she did not need a private desk and computer to do her work, but could share a nurse's station. (Id. ¶46).  Finally, Plaintiff complains that her subsequent supervisor, Buongiorno, once asked her to total up all the data sheets she had entered in a day, which Plaintiff regarded as "indirect" hostility from Wolke. (Id.  ¶ 103).

Even if accepted as true, these minor incidents, spread over a period of years cannot

possibly rise to the level of a "hostile work environment" in violation of Title VII. See, e.g., Harris, supra, 510 U.S. at 21-23.  Job conflicts that "implicate [plaintiff's] personality, temperament, and the other various factors that tend to cause favor or disfavor between co-workers rather than racial issues," cannot sustain a hostile work environment claim. Davis v. City of Newark, 285 Fed. Appx. 899, 903 (3d cir. 2009). A plaintiff "cannot sustain a claim simply by asserting an event and then asserting that it was motivated by racial bias." Ibid. See also, Bain v. Wal-Mart Stores, Inc., (supervisor's "vulgar comments" and use of "rude and nasty tone" in instructing employee  to shut up and count her till was not actionable harassment under Title VII) 585 F. Supp. 2d 449 (W.D.N.Y. 2008); Colon-Fontanez v Municipality of San Juan 671 F. Supp. 2d 300 (D.C.P.R. 2009) (plaintiff's uncomfortable and tense relationship with her supervisor and other employees in her department did not establish pervasive and severe hostility).

Therefore, even if Plaintiff's allegations were accepted as true for the purposes of this motion, they do not offer proof of severe or pervasive hostility based on race.

## POINT III

### PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF RETALIATION UNDER TITLE VII

In order to establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity, (2) the employer took a materially adverse action against her, and (3) there was a causal connection between the protected activity and the employer's action. LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 231 (3d Cir. 2007).  Plaintiff's Opposition confirms her failure to establish a prima facie case of retaliation under Title VII.

### A.    No Protected Activity

Plaintiff's Opposition confirms her failure to participate in a "protected activity" as defined under Title VII and its precedential progeny.  Plaintiff admits in her  Opposition that the "[September 28, 2004 letter to Ms. Lotts] does not specifically assert that Wolke had discriminated against her due to her race," but that in this letter,  she alleged that Wolke showed "favoritism to other co-employees."  (Pltf. Opp. Brief at p. 2).  However, Plaintiff improperly augments and even contradicts her own sworn testimony, by now alleging that there were several, previously undisclosed meetings between she and Lotts.[2]  Plaintiff then improperly asserts certain admissions, hearsay and double-hearsay statements to both Lotts and Wolke.  Plaintiff further directs the Court's attention to Lotts' April 4, 2005, letter to Marcia Parchment, Defendant NJDC's Work-violence Prevention Coordinator, as proof that there were several meetings in October 2004 between she and Lotts.  However, a review of this letter belies this assertion.  Specifically, the April 4, 2005, letter states in relevant part that Plaintiff failed to appear for several meetings scheduled by Lotts, and that it was not until September 28, 2004, that the Plaintiff, Lotts, and Wolke met.  Lotts describes how at this meeting, both Plaintiff and Wolke began crying after Plaintiff asked why Wolke "didn't like her" and after Wolke asked Plaintiff why she was telling co-workers that Wolke was a "racist." Lotts concludes that the parties "agreed to work together." As to "meetings" in October 2004, Lotts writes that Plaintiff was informed

------

[2]  In her deposition, Plaintiff was specifically asked whether she had met with Mrs. Lotts, on multiple occasions to discuss the issues raised in her September 2004 Complaint, and Plaintiff clearly and specifically answered, "No.  Only . . . the meeting that I called [about the 2004 PAR]." (Yi Cert., Exh. A, Atkinson Dep. 53:4-12).  Yet, in her Affidavit opposing summary judgment, Plaintiff conjures up *three* additional meetings with Mrs. Lotts .

about her continued tardiness in October and November 2004.  (Yi Cert., Ex. 3 at *Atkinson EEO 16*).  Accordingly, based upon Plaintiff's own deposition testimony and this letter, no additional meetings occurred in October 2004 regarding Plaintiff's alleged accusations of discrimination.

Likewise, Plaintiff's December 2004 letter to Lotts is devoid of any allegations regarding racial discrimination.  Plaintiff detailed an incident between she and Wolke, wherein the two individuals raised their voices and became "emotional."  (SOMF ¶¶ 66-67).  Plaintiff testified that previous to this letter, she had been telling her co-workers that she believed Wolke was a "racist." (SOMF ¶ 64).  In Plaintiff's own words, prior to the December 1, 2004, letter, she herself had not made any claims of racial discrimination to or about Wolke.  Even in the December letter, she is equivocal about the term, saying Wolke is "like a racist." This letter is hardly a clear statement of opposition to practices opposed under Title VII.  <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 341-42 (3d Cir. 2006).  Instead, Plaintiff details an ongoing souring of her relationship with Wolke.  Accordingly, Plaintiff fails to demonstrate that she engaged in a "protected activity" and consequently, fails to meet the prima facie elements of a Title VII retaliation cause of action.

**B.     No Materially Adverse Action Taken Against Plaintiff by Defendant**

Plaintiff erroneously argues that the question as to whether an alleged retaliatory action is "materially adverse" is a "question of fact."  Several District Courts in the Third Circuit have ruled, as a matter of law, on the issue of whether an alleged retaliatory action is "materially adverse."[3]  In evaluating whether actions are "materially adverse," it is incumbent upon this Court

_____

[3] <u>See</u> <u>McKinnon v. Gonzales</u>, 642 F. Supp. 2d 410, 428 (D.N.J. 2009)("The Court agrees with Defendants, however, that a significant number of the disagreeable experiences Plaintiff complains of do not rise to the level of materially adverse actions and are not actionable under Title VII..."); <u>see</u> <u>also</u> <u>Berry v. N.J. State Prison</u>, 2009 U.S. Dist. LEXIS 115171, 5-6 (D.N.J.

to separate significant from trivial harms because "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." <u>Moore</u>, <u>supra</u>, at 346.  Additionally, complaints of "micromanaging" and increased scrutiny, as well as reprimands about a plaintiff's tardiness, under most circumstances, do not rise to the level of materially adverse actions.  <u>McKinnon v. Gonzales</u>, 642 F. Supp. 2d 410, 426 (D.N.J. 2009).

Courts have recognized "materially adverse actions" in a reassignment of a plaintiff from an "objectively" better and prestigious job to a more demeaning, "arduous and dirtier" position. <u>Burlington Northern & Santa Fe Ry. v. White</u>, 548 U.S. 53, 71 (U.S. 2006).  Likewise, "disproportionately heavy discipline" imposed on a police officer after he filed a EEOC complaint by the defendant taking the plaintiff's weapon, having his job duties changed, being ordered to undergo a psychiatric evaluation, receiving a negative performance evaluation, receiving a 30-day suspension, and being transferred from one district office to another office met the <u>Burlington Northern</u> standard of "materially adverse" action.  <u>Moore</u>, <u>supra</u>, at 346.

In the case at hand, Plaintiff's complained-of "materially adverse" actions fail to meet this standard as held in <u>Burlington Northern</u>. A review of Plaintiff's allegations reveal that any actions taken against her, at best, were petty slights or minor annoyances that do not constitute "materially adverse" actions.  Plaintiff claims the following actions were "materially adverse": 1) in December 2004, Wolke was "rude" to her and said she would "fix" Plaintiff; 2) Plaintiff's vacation request was denied in November 2004; 3) Plaintiff did not receive a new computer, desk,

---

2009)(ruling Plaintiff's allegations did not constitute a materially adverse retaliatory action).

or office as quickly as she would have liked; 4) in February 2005, she was issued a "Red A" for her tardiness; and 5) Plaintiff's job responsibilities were "taken away" when she returned from sick leave in March 2005.

Taken as a whole, these alleged actions, at best, illustrate Plaintiff's aversion to "micromanagement" and/or "petty slights or minor annoyances that often take place at work." Moore, supra, at 346. Unlike the plaintiffs in Burlington Northern and Moore, Plaintiff was not subjected to any "disproportionately heavy discipline" nor was she reassigned from a prestigious position to a more demeaning one.

### 1.       December 1, 2004 Incident

As stated more fully in Defendant's Motion for Summary Judgment, the alleged December 1, 2004, incident between Plaintiff and Wolke was admittedly an emotional argument. Plaintiff testified that previous to this incident, she had been telling her co-workers that she believed Wolke was a "racist" and that on this date Wolke confronted Plaintiff and told her that "I will not be helping you out anymore because I am tried of you calling me a racist" and that if Plaintiff did not stop calling Wolke a racist, that "she would fix [Plaintiff]." (SOMF ¶¶ 64- 66). Plaintiff apparently took umbrage to Wolke's confronting Plaintiff about her admitted disparaging remarks about Wolke being a "racist." However, Wolke's alleged statement cannot be construed as a "materially adverse" action as disagreements and arguments by employees are the types of minor annoyances that often occur in a workplace. Moore, supra, at 346. It is evident that Wolke did not appreciate being called a "racist" to her co-workers by Plaintiff, who was her subordinate. Furthermore, Plaintiff fails to attach liability to Defendant NJDC as Wolke's alleged statement

was the result of Plaintiff and Wolke's deteriorating relationship, which was never endorsed nor

ordered by Defendant NJDC.              **2.      Vacation Request, Office Equipment**

Plaintiff's  request for vacation for November 23, 24, 29, and 30, 2004, were granted by

Defendant NJDC. (SOMF ¶16).  Plaintiff's complaints about not receiving a new computer, desk,

and office as quickly as she would have liked, is not a "materially adverse" action taken against

her by Defendant NJDC.  Plaintiff's allegation that she felt like a "nobody" when she was told

that she did not need to have a new computer, desk, and office, is self-imposed.  Donna Corrado,

who was selected for the newly created position of HIPPA officer,  received a new desk, office,

and furniture.  Other NJDC employees were similarly putting in requests for new desks, but Lotts,

in her capacity as Director of Nursing Services decided that Corrado should receive new office

space and furniture.  Plaintiff admits that eventually, both she and her co-workers all received new

desks.  Furthermore, Plaintiff testified that at the time she was complaining about not receiving

these items, she already had a desk and computer.  (SOMF ¶¶ 46-54).  Certainty, given Defendant

NJDC's finite resources, Lotts' decision to apportion a new desk to Corrado, while other NJDC

employees equally waited for new desks is not a "materially adverse" action directed solely at

Plaintiff.

**3.      Issuance of Red A**

Defendant NJDC rescinded Plaintiff's "Red A," after it was determined that the issuance

of the Red A was due to mis communication by all parties.  Plaintiff cavalierly testified that

during the course of her employment with Defendant NJDC, she was frequently tardy, oftentimes

several times a week.  Plaintiff was apprised by Lotts that her continued tardiness was not

acceptable.  (SOMF ¶¶ 71-73).  As Plaintiff's then-supervisor, Wolke also discussed Plaintiff's

continued tardiness with Plaintiff in December 2004.  On February 15, 2005, Wolke issued a

written warning to Plaintiff for being "absent from work as scheduled without permission and

without giving proper notice of intended absence," in violation of "408, A-1."  Wolke further

noted that on February 14, 2005, Plaintiff "failed to notify the operator an hour prior to the

beginning of your shift of your intended lateness."  (SOMF ¶ 76).  The Disciplinary Action

Booklet (Administrative Order 4:08), published by Defendant NJDC's agency specifically states

that a supervisor may issue a written warning or official reprimand if an employee is "absent from

work as scheduled without permission and without giving proper notice of intended absence."

(SOMF ¶¶ 77-78).  At the instruction of Lotts, Wolke issued a "Red A" to Plaintiff for her

absence from work on February 15, 2005.  Although Defendant NJDC rescinded Plaintiff's "Red

A," both Wolke and Lotts were well within their supervisory rights to discipline Plaintiff for her

absence of work on February 14, 2005.  To the extent Plaintiff felt that she was being

"micromanaged," subjected to increased scrutiny, and reprimanded about tardiness, this action

fails to rise to the level of a "materially adverse" action.  McKinnon, supra, at 426.


### 4.        Job Duties Taken Away in March 2005

Plaintiff's allegations that certain "job duties" were taken away from her in March 2005

fail to rise to the level of a "materially adverse" action.  Commencing in early March 2005 until

her retirement in September 2007, Plaintiff took a series of leaves of absences and worked only

sixteen out of a total thirty months.  (SOMF ¶¶ 118-123).  Previously, Plaintiff had complained to

16

her supervisors that she felt overwhelmed about her workload.  (SOMF ¶¶ 31-38).  Plaintiff also

lamented that she believed her supervisors failed to grasp the enormities of her job duties, as she

felt "overwhelmed with paperwork" and that Lotts did not realize the "extent of my paperwork."

(SOMF ¶ 22).

Upon Plaintiff's return from the first of her many extended sick leaves, Plaintiff

complained that she "did not receive [her] job duties back."  Plaintiff continued, "but I don't have

a problem with that simply because my job duties were overwhelming." (SOMF ¶¶ 101-102).

Defendant NJDC conducted a meeting to address Plaintiff's concerns that she believed her job

duties were being "taken" from her by another employee named Katia.  (SOMF ¶ 108).

Plaintiff was informed that while she was on a three month leave of absence, another employee

had to assume her job duties.  Ibid.  Plaintiff was further informed that Lotts decided to assign

Katia to coordinate the scheduling of medical trips while Plaintiff was on a leave of absence, and

that it was Lotts' decision to keep Katia in this role and have Plaintiff focus on completing data

sheet as there was a "pending need" for the sheets.  (SOMF ¶ 109).  Lotts indicated that she took

Plaintiff's previous complaints about "overwhelming" work loads into consideration in assigning

tasks that were assigned to Plaintiff.  Ibid.  Certainly, in light of Plaintiff's many complaints about

being overwhelmed with work, coupled with Defendant NJDC's operational needs, it was both

reasonable and incumbent upon Defendant NJDC to modify Plaintiff's job tasks.  Unlike the

plaintiff in Burlington North, who was stripped of his prestigious and "objectively" better fork-lift

operator title to the more demeaning track laborer position, Plaintiff retained her position as a

Principal Clerk Typist.  In fact, Defendant NJDC acceded to Plaintiff's request for lesser job

duties, and accordingly, Plaintiff's allegations do not rise to a "materially adverse" action.  Taken

17

as a whole, Plaintiff's litany of allegations fail to meet the "materially adverse action" standard as set forth in <u>Burlington North</u>.

Furthermore,  none of these alleged actions taken against Plaintiff "dissuaded" her from making or supporting her charge of discrimination against Ms. Wolke, as evidenced by her letters to Lotts, filing of an internal DHS EEO complaint, numerous meetings between Plaintiff and Defendant NJDC management, the filing of her EEOC complaint, and the current lawsuit.  <u>Santa Fe Ry. Co. v. White</u>, 126 S. Ct. 2405, 2415 (2006).   Accordingly, Plaintiff fails to demonstrate that she suffered a "materially adverse" action as a result of engaging in a protected activity.

**C.     No Causal Nexus and Defendant NJDC Has Proffered Legitimate Non-Discriminatory Reasons for Alleged Actions Taken Against Plaintiff**

For the reasons expounded more fully in Defendant's moving papers, Plaintiff fails to establish a causal connection between the alleged protected activity and Defendant NJDC's alleged actions against Plaintiff.  <u>LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n</u>, 503 F.3d 217, 231 (3d Cir. 2007).  Additionally, Defendant NJDC has proffered numerous legitimate, non-discriminatory reasons for its actions.  <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 802 (1973).

Plaintiff fails to establish, by a preponderance of the evidence, that the legitimate reasons offered by Defendant NJDC were not its true reasons, but were a pretext for discrimination."  <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507-508 (1993).   In order to prove pretext, Plaintiff advances a previously undisclosed theory that Wolke treated Caucasian employees more favorably than presumably, African-American employees.  However, this theory must fail as it is nothing more than an inappropriate attempt to attach individual liability upon Wolke, which is not permissible under Title VII.  <u>Sheridan v. E.I. DuPont de Nemours and Company</u>, 100 F.3d 1061 (3rd Cir.)(en

18

banc) cert. denied, 117 S.Ct. 2532 (1996).   Plaintiff fails to address each of Defendant NJDC's

legitimate, non-discriminatory explanations for its actions pertaining to Plaintiff.  Instead, Plaintiff

seeks to once again, focus on Wolke, who was previously dismissed by this Court as an individual

defendant.  Plaintiff's fixation on Wolke's alleged "I will fix you" comment as proof of "malice

and hatred" fail to demonstrate pretext, as Defendant NJDC sided with Plaintiff in her various

workplace disagreements with Wolke, specifically by: 1) rescinding Plaintiff's Red A although

she was admittedly chronically tardy and was not present at work on the day in question; 2)

granting Plaintiff's vacation request although it was not submitted on a timely basis; 3)  reducing

Plaintiff's workload after she complained that is was "overwhelming;" and 4) providing Plaintiff

with a new desk at the same time her other similarly situated co-workers received one.

Accordingly, Plaintiff has failed to demonstrate any "weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions" in Defendant NJDC's various explanations.

Fuentes, supra, 32 F.3d at 765, and Defendant respectfully requests that an Order be entered

granting Summary Judgment.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.

Respectfully submitted,

PAULA T. DOW
Attorney General of New Jersey
Attorney for Defendant NJDC

By:      s/David Yi
David Yi
Deputy Attorney General

Dated: August 27, 2010

20