PAULA T. DOW
Attorney General of New Jersey
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, New Jersey  08625-0112
Attorney for Defendants
    North Jersey Developmental Center and
    Carole Wolke

By:    David Yi
         Deputy Attorney General
         (609) 292-9989
         david.yi@law.dol.lps.state.nj.us

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF NEWARK

| | | |
|---|---|---|
| PHYLLIS ATKINSON, | : | Civil Action No. 06-5485 (PGS) |
| | : | |
| Plaintiff, | : | **<u>Civil Action</u>** |
| | : | |
| v. | : | **DEFENDANT'S REPLY TO PLAINTIFF'S** |
| | : | **COUNTER-STATEMENT OF FACTS AND** |
| NORTH JERSEY DEVELOPMENTAL | : | **ADDITIONAL FACTS** |
| CENTER and CAROLE WOLKE, | : | |
| | : | |
| Defendants. | : | |

Defendant North Jersey Developmental Center ("Defendant," "NJDC") submits the following responses to Plaintiff's Counter-Statement of Material Facts and Statement of Additional Facts relative to Defendant's Motion for Summary Judgment.

**<u>Plaintiff's Counter-Statement of Facts</u>**

1-10.    Plaintiff does not dispute any material fact stated by Defendant.

11.    Plaintiff admits the facts stated by Defendant and supported by citations to the record.  Plaintiff  "asserts" that other statements were made by herself and others.  Plaintiff,s assertions are not supported by citations to the record, incorporate hearsay, and do not create any

material issue of fact.  Defendant's statement of fact should therefore be deemed admitted.

12- 14.   Plaintiff does not dispute any material fact stated by Defendant.

15.   Plaintiff's "denial" of the statements made by Carole Wolke in her certified answers to Plaintiff's interrogatories is purely argumentative and should be disregarded.  Plaintiff's cites no fact of record to support her opinion that Wolke's reasons for giving Plaintiff a particular PAR rating are "fabrications."

16.   Plaintiff admits that her prior supervisor, Ms. Bivins, noted that Plaintiff was instructed to input client data in the computer system.  Plaintiff's attempt to qualify this admission by creating hearsay testimony for Ms. Bivins is improper and irrelevant and should be disregarded.

17.   Plaintiff "denies" another of Carole Wolke's certified answers to Plaintiff interrogatories by claiming that Wolke did not provide her with this information while she was supervising Plaintiff.  Plaintiff's argument is improper and irrelevant. Wolke answered an interrogatory regarding her own reasoning process, not prior conversations with Plaintiff. (See Yi Cert., Exh. C, No. 7).

18, 19.   Plaintiff admits the material facts as stated by Defendant; namely, that Wolke gave her a 24 on her PAR, which rating was approved by Director Lotts, but disputed by Plaintiff.

20.   Plaintiff "denies" that the Director of Nursing, Roxanne Lotts, "attempted" to reach her to schedule meetings with her in April, May and June 2004.  Plaintiff's "denial" is not supported by any reference to the record and she can have no first hand knowledge of attempts Lotts may have made to reach her at times when she was absent from work.  Furthermore, Plaintiff's dispute of this point does not create a material issue.

21- 25.   Plaintiff does not dispute any material fact as stated by Defendant.  Plaintiff's

2

argument that unnamed co-workers received better PAR ratings than she did is based solely upon a sham affidavit in contradiction of her prior deposition testimony. Plaintiff repeatedly admitted in deposition that she did not know what ratings her co-workers got, only that they said they were "happy" with their PARs or had "passed." (Yi Cert., Exh. A. 91:2- 92:7; 97:4- 101:10). Plaintiff further admitted that her own rating of 24 was "above satisfactory (Id. 101:11- 12), and it is "possible" Nurse Corrado might have gotten a 23 or 24 rating. (Yi Cert., Exh. A, 91:24- 92:7). Plaintiff's opinion that Wolke "should have advised her" or given her "warnings" about her performance problems prior to the PAR is also purely argumentative and not supported by any citation to the record.

26.     Defendant acknowledges that the wording of Paragraph 26 in its Statement of Facts is ambiguous.  The PAR that Plaintiff did not read and "didn't really know what was in there" was the PAR from Ms. Bivens, her supervisor prior to Wolke, which included directions to Plaintiff complete certain data entry backlogs by the end of the quarter. (Yi Cert., Exh. A, 62:17- 63:21; 84:2- 23) At no point in her deposition testimony did Plaintiff state that she "fully read and understood" the April 2004 PAR from Wolke.

27- 30.   Plaintiff admits that, as stated by Defendant, Bivens gave Plaintiff interim PAR scores of 23 and final scores of 21 and 22 during two ratings cycles, from 2001 through 2003.

31- 32.   Plaintiff's denial of facts stated by Defendants is not supported by the record. Plaintiff merely attempts to qualify her earlier statements regarding her workload. The record shows that, at various times after receiving her PAR from Wolke, Plaintiff described herself as "overwhelmed with paperwork" (Yi Cert., Exh. A, 33:22) and Plaintiff does not deny that there were days when she could not finish her work in the allotted time.

33.    Plaintiff's denial that she asked for overtime to complete her assigned work is contradicted by her prior denial testimony.  (Yi Cert., Exh. A, 49:3-15).  Plaintiff's "denial" is merely an argument that her requests for overtime were intermittent.

34.    Plaintiff's denial is not supported by the record.  Her attempt to create new testimony regarding another clerk-typist, Sheila McCray is not only improper, but contradicted by her deposition testimony, to wit:

> Q.    And why did you feel like you needed overtime to get it done?
> A.    Because of all the workload I had,  because of my workload.
> Q.    Were there other principal clerk  typists working with you?
> A.    Yes.
> Q.    Did they have the same duties as  you did?
> A.    No.
> Q.    What were their duties relative to  yours that were different?
> A.    I don't know, they -- I'm not for  sure.  They weren't doing the medical trips, they weren't doing what I was doing, that's all  I can know.  Their -- my job was my job, their  job was their job. Basically we might -- we do  the time sheets, we might have that as being the same, answering the phone, we might have that as  doing the same, but details, we had different  responsibilities.
> Q.    Okay, so there -- how many other  principal clerk typists would you say were  working with you in that unit?
> A.    One that I know of.
> Q.    And did you feel like you were getting more work than that person was?
> A.    Maybe not more work, but could  have been more -- coming at a more faster pace. (Atkinson Dep. 49:20- 50:19)

Morever, the Affidavits submitted by Plaintiff and Sheila McCray  in opposition to  summary judgment indicate that McCray, like Plaintiff, is African-American.

35.    Plaintiff's denial of the facts stated by Defendant is purely argumentative, not supported by citation to the record, and further contradicted by Plaintiff's prior deposition testimony and documentary evidence in the record. This evidence establishes that Plaintiff's earlier PARs from

Bivens noted the need to catch up certain entries on the computer. (Yi Cert., Exh. A, 54:15- 55: 3; Exh. C, Response No. 7; Exh. E, *Atkinson PERS 103* ).

36.     Plaintiff admits the material facts as stated by Defendant.

37- 38.   Plaintiff's attempt to deny statements in these paragraphs is improper as the statements were taken verbatim from Plaintiff's deposition testimony.  The cited passages speak for themselves.   Plaintiff's argumentation and contradiction of her own prior testimony should be stricken and disregarded.

39:      Plaintiff's admits the material facts as stated by Defendant.

40- 41.   Plaintiff admits the material facts as stated by Defendant. Plaintiff's subsequent argumentation is irrelevant, improper and contradicted by Plaintiff's own deposition testimony. Specifically, when questioned in deposition, Plaintiff did not allege that Caucasian employees were allowed to violate attendance policies or were disciplined more leniently than non-white employees. (Yi Cert., Exh. A, 88:10- 89:5; 99:16- 101:13; 129:18- 133:12).  Plaintiff's allegation that Registered Nurses were subject to the same policies as clerk transcribers for "vacation requests, breaks and lunch" is not supported by any fact of record.

41- 42.   Plaintiff admits the material facts as stated by Defendant.  Plaintiff's attempt to "assert" facts regarding Ms. Corrado that contradict her deposition testimony should be disregarded. Specifically, Plaintiff was repeatedly asked if she knew whether Corrado's score was raised or lowered and she admitted that she did not.

> Q.   And you thought it was unfair that
> she had -- she was happy with her score and you
> were unhappy with your score.
>    A.    No, I thought it was unfair that

5

> my PAR rating was being dropped and hers was not
> being dropped or staying the same, whichever it
> was.
>     Q.   But you just testified you didn't
> see --
>     A.   No.
>     Q.   -- her PAR?
>     A.   -- I didn't see it.
>     Q.   Okay.
>     A.   That's why I say it either was
> better, it either was up or either it stayed the
> same.  She was happy with what she had.
>     Q.   Did she tell you what her actual
> score was?
>     A.   No, I didn't aks sic and she
> didn't tell me and I didn't even tell her what
> mine's was.  I didn't mention anything, I was
> just curious to know, you know.

(Yi Cert., Exh. A, 91:2- 92:7).

Plaintiff new claim that she "specifically asked and was told by Ms. Corrado that her PAR score had

not been lowered" should be disregarded as it is supported only by a sham affidavit.

44.    Plaintiff's "denial" does not challenge any material fact and is contradicted by her

cited deposition testimony.

45.    Plaintiff admits the material facts as stated by Defendant.

46- 47.   Plaintiff's "denial" does not challenge any material fact and is contradicted by her

deposition testimony.

48- 53.   Plaintiff admits the material facts as stated by Defendant.

54.    Plaintiff's "denial" is not supported by any facts of record, but is contradicted by

her prior deposition testimony.

55.    Plaintiff admits the material facts stated by Defendant.

56.     Plaintiff's "denial" is not supported by any facts of record, but is contradicted by her cited deposition testimony.

57.     Plaintiff admits the material facts stated by Defendant.

58.     Plaintiff's "denial," which appears to be a criticism of Defendant's syntax, is not supported by facts of record, but is contradicted by her cited deposition testimony.

59.     Plaintiff admits the material facts as stated by Defendant.  Plaintiff's subsequent allegations are hearsay, were not disclosed in her deposition and are based only upon a sham affidavit.

60.     Plaintiff's "denial" is not supported by an facts of record.  Plaintiff's allegations herein were not disclosed in her deposition and are based only upon a sham affidavit.

61.     Plaintiff's "denial" is not supported by any citation to the record.  Defendant's statement was not hearsay, but the certified interrogatory answer of the person who received the vacation requests at issue.

62.     Plaintiff admits the material facts as stated by Defendant.  Plaintiff's subsequent allegations are improper as they are based only upon a sham affidavit and contradict her deposition testimony.  Specifically, in deposition Plaintiff denied ever meeting with Ms. Lotts about any subject other than her 2004 PAR and did not disclose any of the hearsay statements she now attributes to Lotts. (Yi Cert., Exh. A, 53:4- 12).

63- 65.   Plaintiff admits the material facts as stated by Defendant.

66.     Plaintiff's "denial" of the facts stated by Defendant contradictions her deposition testimony, in which she variously stated that "we [she and Wolke] got emotional," or "could have gotten emotional;"  "I talk loud anyway so I know my voice was raised if not hers;" and "I was kinda

upset." (Yi Cert., Exh. A, 111:10- 113:12).

67-71.   Plaintiff admits the material facts stated by Defendant.

72.   Plaintiff admits the material facts stated by Defendant.  Plaintiff's attempt to add hearsay testimony attributed to a former supervisor, Nancy Ward, and to Ms. Lotts is improper, irrelevant, not supported by citation to the record, and therefore should be disregarded.

73.   Plaintiff admits that Ms. Lotts spoke with her about her tardiness at various times in October and November 2004.  Plaintiff only denies discussing the matter at the September 2004 meeting regarding her PAR.

74.   Defendant acknowledges a typographical error in Paragraph 74 of its Statement of Facts.  The citation to Plaintiff's deposition should read "Atkinson Dep. 16**5**:12- 15."  In the correctly cited passage, Plaintiff admitted that she talked to Ms. Wolke about her tardiness in December 2004.  Therefore, Plaintiff's denial of the material facts as stated by Defendant is baseless and should be disregarded.

75-78.   Plaintiff admits the material facts as stated by Defendant.  Plaintiff's argument that the institutional policy about calling in "was intended to cover absences, not lateness" (¶76) is baseless and is contradicted by her prior deposition testimony, as follows:

> Q.   Do you know what the policy was in terms of letting your immediate supervisor know if you're not coming in?
> A.   No, **I know you call the operator a hour before, if you're gonna be out you call the operator a hour before; if you gonna be late you call the operator.**  We don't have to call the immediate supervisors.

(Yi Cert., Exh. A, 32:19- 33:1)

79.     Plaintiff's "denial" of Ms. Wolke's certified interrogatory answer is without support in the record. Plaintiff's argument and Exhibit M to her Certification are irrelevant as they pertain to the policy for terminating an individual who has accumulated five "red As," not the criteria for entering a single red A.

80- 89.   Plaintiff admits the material facts stated by Defendant.  Plaintiff's repetition in ¶81 of arguments and hearsay previously presented in ¶72,  regarding alleged conversations with a Nancy Ward and Mrs. Lotts, should be disregarded for the reasons set forth in response to ¶ 72.

90-93.  Plaintiff admits the material facts stated by Defendant.  Plaintiff's additional allegations in these Paragraphs are improper and contradicted by her prior testimony.  Plaintiff repeatedly testified that she did not believe that Mike Buongiorno discriminated against her or intentionally aided in retaliation against her.

> Q.    Okay.  So you're saying by her [Wolke]  supervising Mike [Buongiorno]  that was harassing you?
> A.    No.  She was getting him to harass  me in a sense.
> Q.    So now you're saying Mike  Buongiorno racially harassed you?
> A.    Not intentionally.  He didn't know  what was going on.

(Yi Cert., Exh. A., 191:4- 15).

94- 100.   Plaintiff admits the material facts stated by Defendant.

101-103.   Plaintiff admits the material facts stated by Defendant.  Plaintiff's additional allegations are not supported by the record. The letter cited speaks for itself.  Plaintiff did not reference her prior discrimination complaint against Wolke or allege retaliation. She made a "semi-complaint" that Buongiorno's request for her to give him a summary of her daily work was "indirect discrimination and harassment from Ms. Wolke." Plaintiff also wrote that she did not object to a reduction in her job duties because they had been "overwhelming," and requested that before any

duties were reassigned, they be "re-evaluated" to "lighten the load on me." (Yi Cert., Exh. 31, *Atkinson EEO 11-12*).

104- 111.   Plaintiff admits the material facts stated by Defendant.  Plaintiff's argumentation and hearsay in response to ¶ 104 and ¶ 108 is improper and should be disregarded.

112- 114.   Plaintiff admits the material facts stated by Defendant.

115.       Plaintiff admits the material facts stated by Defendant.  Plaintiff's statements regarding Ms. Wolke's complaint to EEO are irrelevant to any claim by Plaintiff in this action.

116.       Plaintiff admits the material facts stated by Defendant.  Plaintiff's allegation that she and Wolke continued to work in the same building does not dispute the fact that she ceased to be supervised by Wolke.

117- 133.  Plaintiff admits the material facts stated by Defendant.

**Reply to Plaintiff's Additional Facts**

134- 135.   Defendant does not dispute that Plaintiff is or has been recognized for her work with foster children.  Defendant denies that the facts alleged in these Paragraphs are material to any issue in dispute in this litigation.

136.       Defendant denies that any hearsay statements in this Paragraph are supported by any facts in the record or are material to any issue in dispute.  Further, the document Plaintiff cites is a request for adjusted time in 2003 only.  The arguments, allegations and opinions in this Paragraph are improper and should be disregarded.

137.       Denied as allegation, argument and opinion, unsupported by any citation to facts in the record.

138.       As noted in response to ¶ 43, supra, Plaintiff's hearsay allegations regarding Donna

10

Corrado are contradicted by Plaintiff's prior deposition testimony. (Yi Cert., Exh. A, 91:2- 92:7). Defendant does not deny that Plaintiff initially received a PAR rating of 24 from Ms. Wolke in or about April 2004 and contested that rating.

139.    Denied as argument and allegation. Neither Plaintiff's Complaint nor her deposition testimony contains any statement or allegation that Plaintiff sought meetings with Ms. Lotts in or about May 2004 and was "put off."

140.    Defendant denies that Plaintiff had a separate meeting with Ms. Lotts in September or October 2004 to discuss her PAR and alleged discrimination. Moreover, Plaintiff was specifically asked in deposition how many times she spoke with Ms. Lotts about these issues and she specifically identified only one meeting, which included Ms. Wolke. (Yi Cert., Exh. A, 52:15- 53:12). Plaintiff's attempt to amend this testimony and present new allegations via sham affidavit should be disregarded.

141.    Defendant admits that Ms. Lotts met with Ms. Wolke and Plaintiff on or about September 28, 2004 to discuss Plaintiff's dispute of her April 2004 PAR. Defendant admits that Plaintiff's was told her PAR rating was lower than her interim score because her data input was backlogged, and that Plaintiff requested and received paid overtime to catch up the backlog.

142.    Defendant admits, upon information and belief, that at the above-described meeting, Ms. Wolke told Plaintiff that it hurt Wolke "when plaintiff tells everyone that she's a racist," and that Wolke began to cry. Defendant denies that the PAR rating of registered nurse Donna Corrado was discussed at this meeting. Defendant denies that Plaintiff made any allegations of race-based discrimination at this meeting.

143.    Defendant denies that Plaintiff submitted a vacation request form on March 22,

2004.  Defendant admits only that Ms. Lotts marked a request from Plaintiff as received March 30, 2004. (Yi Cert., Exh. C, Answer No. 14).

144.    Defendant admits that on or about November 19, 2004, Plaintiff submitted a vacation request for dates later in November and that Ms. Wolke initially denied this request on the grounds that it had been submitted too late.  (Yi Cert., Exh. C , Answer No.14).  Defendant denies that Plaintiff had submitted a request for the same dates as early as March 2004 or that Wolke acknowledged receipt of same.  (Ibid.)

145.    Plaintiff's arguments, allegations and hearsay attributed to Ms. Lotts are improper and are contradicted by Plaintiff's prior deposition testimony.  In deposition, Plaintiff specifically testified that when she approached Lotts about her difficulty in obtaining vacation leave, Lotts referred her back to Wolke:

> Roxanne [Lotts] told me she was not gonna approve it [the vacation request],  she told me to call, she told me to call Carole  at home and, um, and...she told me to call  Carole at home and if Carole changes it she'll  change it.  And I told her I'm not calling  anyone at home to request -- I called the CEO, um, Bernice Davis?

> (Yi Cert., Exh. A, 156:13- 19)

Plaintiff's attempt to fabricate new testimony and hearsay by way of sham affidavit should be disregarded.

146.    Defendant admits that on or about December 1, 2004, there was an altercation between Plaintiff and Carole Wolke and a witness corroborated that Wolke had said "I will fix you" or words to that effect to Plaintiff. (Yi Cert., Exh. 14).  The Affidavit of Marie Watts clearly indicates that Ms. Watts was not an eye-witness to this incident, and merely heard Plaintiff's account

afterward.  Plaintiff's arguments, opinions and unsupported allegations are improper and should be disregarded.

147.     Defendant admits that on or about December 1, 2004, Plaintiff sent Roxanne Lotts a letter regarding her altercation with Ms. Wolke and that the letter included some of the same allegations now set forth in Plaintiff's Affidavit.  Plaintiff's claim that she had previously "made several verbal complaints" to Ms. Lotts about Wolke is contradicted by her own deposition testimony. (Yi Cert., Exh. A, 52:15- 53:12; 183:4- 9).  Plaintiff's allegations, arguments and opinions are improper in a Statement of Facts and should be disregarded.  It is not disputed that in or about March 2, 2005, Mrs. Lotts referred Plaintiff's various complaints about Wolke to the NJDC Human Resources Office and an investigation commenced.  (Yi Cert., Exh. 4).

148- 149.   Denied.  The allegations contained in the Affidavits of Plaintiff, Emma Jones and Sheila McCray , which assert that Plaintiff and other non-white employees were discriminated against in the assignment of computers and desks, are hearsay and are contradicted by prior testimony and evidence in the record.

A.     Plaintiff now claims that in December 2004 she participated in a meeting where complaints were raised about Wolke's conduct toward Plaintiff and the allocation of computers and desks. (Pltf. Aff. ¶¶ 16, 17). However, at her deposition, Plaintiff reviewed a memorandum from Mrs. Lotts which stated that the meeting with Plaintiff, Wolke, Jones and Donna Corrado to discuss Corrado's new duties and the allocation of computers and desks occurred on December 30, **2003**, and Plaintiff confirmed that she recalled "this meeting on **December of 2003**". (Yi Cert., Exh. A, 56:17- 24).  Plaintiff's prior testimony therefore establishes that the meeting occurred

13

long before she contested her PAR or made any other complaint against Wolke.

B.    At her deposition, Plaintiff also reviewed a written statement given to EEO Investigator Ed McCabe by witness Sheila McCray, in which McCray stated that she had no problem with Ms. Corrado receiving a desk before she did, and Plaintiff testified as follows:

> Q.    And look at the bottom.  Mr.  McCabe asks her,
> "was there a problem with your  not getting a desk
> while a white employee did."  Miss McCrea responds
> "no, I didn't need a desk,  but I got one soon after Miss
> Corrado.." Do you have any disagreement with  that
> statement?
> A.    No, it's just what I said, we got  one after Miss Corrado.
>
> (Yi Cert., Exh. A, 137:17-25)

C.    Again, at her deposition, Plaintiff was asked if she claimed white employees received preferential desk assignments and she denied it:

> Q.    Okay, what else is there?  How  about the desk?  Are
> you saying that white  counterparts were given desks and you
> weren't?
> A.    No.
> Q.    All right.
> A.    That never was -
>
> (Id., 131:19-24

D.    Plaintiff was also asked whether she objected to Corrado assuming some of her former duties:

> Q.    Did you feel upset when Donna  Corrado took all of
> your medical consent  responsibilities?
> A.    Oh, no, never.  Never, ever.
> Q.    You were happy that she did that?

14

A.    It was, it was okay, I was fine with it.  It was never a problem until my PAR rating was dropped.

(Id. 142:20- 143:2)

Plaintiff's attempt, and that of her supporting witnesses, to use affidavits to create a sham history of discrimination complaints and a false chronology of events in support of Plaintiff's retaliation claim is egregiously improper.  All allegations in Paragraphs 148 and 149 of Plaintiff's Additional Facts should be stricken and disregarded.

150.    Plaintiff's allegations are improper, as they contain unsupported hearsay and are not material to any issue in this litigation.

151.    Denied.  Plaintiff has previously admitted that she was scheduled to begin work at 9:00 a.m. on February 14, 2005, but did not call in to NJDC until 10:42 a.m. to say she would be late.  (Defendant's SOMF ¶¶ 81- 83, admitted by Plaintiff).  She also admitted that she did not arrive at work until 1:35 p.m. (Id. ¶ 85).  Plaintiff later admitted that she gave the EEO Investigator a different reason for her tardiness than the account she provided in her deposition (Id. ¶¶ 86, 87).

152.    Defendant admits that Wolke issued Plaintiff a written warning and "Red A" for her tardiness.  However, the "Red A" was then rescinded. (Yi Cert., Exh. A, 181:14- 16).

153.    Denied as stated.  The document titled " Five Day 'Red A' Termination Process" produced by Plaintiff is a hearsay document; moreover, it describes the process for initiating termination proceedings against an employee who has five consecutive "Red A" absences.  It does not set forth the criteria for assigning a single "Red A."

154.    Plaintiff's hearsay allegations regarding a conversation with Ms. Lotts, which contradict her deposition testimony, are improper and should be disregarded. It is not disputed that

15

Ms. Lotts took responsibility for approving or joining in the decision to give Plaintiff a "Red A" on or about February 15, 2005.

155.    Denied.  Plaintiff allegations regarding a meeting with Ms. Lotts in February 2005 and her attempts to ascribe hearsay statements to Ms. Lotts in connection with the alleged meeting are improper and contradicted by Plaintiff's prior deposition testimony. Plaintiff was asked in deposition about the number of occasions she met with Lotts regarding issues raised in the Complaint and she identified only one meeting, in September 2004, to discuss her PAR. (Yi Cert., Exh. A,  53:4-12).  Plaintiff further testified that after she submitted her  February 15, 2005 letter, Lotts attempted to schedule a meeting, but Plaintiff could not attend because of a doctor's appointment. (Id. 181:24- 182:17). Plaintiff specifically denied any other meetings with Lotts during this time period. (Id. 183:10-15).  (See also Plaintiff's Additional Facts, ¶¶ 157-158, charging that Lotts did not take action prior to referring Plaintiff's complaints to Human Resources in March 2005) At her deposition, Plaintiff also authenticated a letter she sent to Ms. Lotts on or about February 27, 2005, in which Plaintiff recounted her history of disputes with Ms. Wolke but made no mention either of falsification of time records or of any conversations with Ms. Lotts regarding this claim.(Yi Cert., Exh. 19). Plaintiff's attempt to manufacture new testimony for herself and hearsay testimony for Ms. Lotts through a sham affidavit is a clear violation of the court rules and should be disregarded and/or sanctioned.

156.    The allegations, hearsay and double-hearsay in Paragraph 156, and the corresponding paragraphs of Plaintiff's Affidavit and the Affidavit of Sheila McCray,  violate the court rules and should be disregarded.

A.    Neither in her Complaint nor in her sworn deposition testimony did Plaintiff allege

16

any pattern of discrimination against African-American employees with regard to time entries or the enforcement of disciplinary action. Under repeated questioning in deposition, Plaintiff specifically testified that she limited her claims of race-based discrimination to the following: her April 2004 PAR; her November 2004 vacation request; and the change in her job duties when she returned from medical leave in or about June 2005. (Yi Cert., Exh. A, 130:21-133:24; Exh. B, Second Amended Complaint, ¶¶12, 16). Plaintiff further alleged and testified that the single occasion upon which she herself disputed a time entry (the rescinded "Red A"), she believed Wolke had acted in retaliation for Plaintiff's prior complaint. Plaintiff made no allegation of similar discrimination against other African-American employees. (Yi Cert, Exh. A, 180:7- 181:13; Exh. B, Compl. ¶17).

B.    The Affidavit of Sheila McCray consists of improper opinions, allegations and hearsay. Ms. McCray makes no statement of fact within her knowledge regarding any specific act or event alleged in Plaintiff's Complaint or Plaintiff's own prior testimony. McCray admits that her Affidavit statements contradict the prior signed statement she submitted to the NJDC EEO Investigator. McCray offers only hearsay and conjecture about possible "retaliation" to justify her contradiction of her prior statements. At deposition, Plaintiff testified to her agreement with McCray's ***prior*** statement to the EEO Investigator.    (Yi Cert., Exh. A, 137:17-25).

Plaintiff's attempt, and that of her witness, to contradict prior statements and testimony by way of sham affidavits is improper and should be disregarded.

157.    Defendant admits only that on or about February 27, 2005 Plaintiff wrote a letter to

17

Ms. Lotts that included some of the same claims and allegations set forth in this Paragraph. Plaintiff's allegations, arguments and opinions are improper in a Statement of Facts and should be disregarded.

158.    Defendant admits only that on or about February 28, 2005, Plaintiff submitted a Grievance Form, pursuant to her rights under her collective bargaining agreement, and a cover memorandum to NJDC Employee Relations, and these documents included some of the same claims and allegations set forth in this Paragraph.

159.    Plaintiff's arguments, allegations and opinions regarding Michael Buongiorno's alleged "micro-management" Plaintiff after her February 28, 2005 grievance against Wolke are improper and contradicted by her prior deposition testimony. Defendant denies that Buongiorno became Plaintiff's supervisor in or about March 2005.  Buongiorno was Plaintiff's supervisor at least as early as September 28, 2004, when he executed Plaintiff's PAR, which was verified by Plaintiff at her deposition. (Yi Cert., Exh. A, 95:6-16; Exh.11 ).  Plaintiff also testified that Buongiorno was her supervisor on February 14, 2005, the day she received the later-rescinded "Red A." (Yi Cert., Exh. A, 170:9- 25).  Plaintiff further testified that she believed Buongiorno "didn't know what was going on" between her and Wolke (Yi Cert., Exh. A., 191:4- 15).; that she did not believe Buongiorno "racially harassed" her (Ibid.); and that she never filed a grievance against him. (Id., 23:17- 24:3).

160.    Plaintiff's allegations, arguments and opinions regarding Ms. Lotts are improper and should be disregarded. Defendant admits only that on or about March 29, 2005, Plaintiff submitted a Discrimination Complaint Processing Form to the New Jersey Department of Personnel, in which she alleged acts of discrimination in April, November and December of 2004; specifically, her

dispute of her April 2004 PAR; her perception that Nurse Corrado was treated more favorably than she; and delay in granting her Thanksgiving vacation request. (Yi Cert., Exh. 1).

161.    Defendant denies that there is any fact in the record to support Plaintiff's conclusion that any "depression, stress or anxiety" she alleged suffered in Spring 2005 was caused by Ms. Wolke or Ms. Lotts or by "discrimination, harassment and retaliation." Plaintiff's unsupported allegations, arguments and opinions are improper and should be disregarded.  Plaintiff's allegation that Ms. Lotts "instructed her not to resume her job duties back" should also be disregarded as hearsay.  Defendant admits only that Plaintiff sent Ms. Lotts a letter on or about June 17, 2005, in which she wrote that she did not object to a reduction in her duties because she had previously been "overwhelmed," and she did not want to resume her prior duties until they had been "re-evaluated, to lighten the load on me." (Yi Cert., Exh. 31).

162.    Plaintiff's unsupported arguments and allegations should be disregarded.  There is no evidence in the record to indicate that Plaintiff was "treated like an outcast." Defendant denies that nothing was done to address Plaintiff's questions and concerns regarding her revised job duties. The record shows that on June 28, 2005, a meeting was held between Ms. Lotts, Plaintiff and her union representative.  (Yi Cert., Exh. 36). The record also shows that at this meeting various steps were taken at the meeting or thereafter to address Plaintiff's concerns:

A.    Plaintiff was referred to the Employee Advisory Service for assistance in dealing with her job stress and continuing resentment of Wolke, including the statement in Plaintiff's June 17, 2005, letter that Wolke was a "poison snake, [and] the only way that you can stop a snake from biting you is to kill it." However, Plaintiff refused the recommended counseling. (Ibid.)

19

B.      A proposal to arrange a meeting between Plaintiff, her union representative and her current supervisor (Buongiorno), before her next performance review to reach agreement on her developmental plan. (Ibid.)

C.      A confirmation that the "Red A" had been rescinded and Plaintiff would be paid for any time deducted. (Ibid.)

D.      An invitation to Plaintiff to e-mail Lotts with a formal request for flex-time. (Ibid.)

E.      On or about April 13, 2006, Plaintiff received a letter from DHS regarding the investigation of her EEO complaint.  The letter advised her that Carol Wolke would be recommended for administrative counseling even though it could not be determined that Wolke had violated the State anti-discrimination policy. (Yi Cert., Exh.  38).

Defendant further denies that during the final two years of her employment Plaintiff was not given back "any" of her job duties and "spent most of her time sitting in her office" without sufficient work to do.   Following her March-June 2005 medical leave, Plaintiff's duties were modified at her request.. (Yi Cert., Exh A, 216:4- 218:1; 219:22- 220:22; Exh. 31). Plaintiff has also admits that she was out of work on medical leaves for 16 of the last 30 months of her employment with NJDC. (Yi Cert., Exh. A, 218:2- 7).

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Defendant


By:    s /David Yi             
        David Yi
Dated: August 27, 2010        Deputy Attorney General